## NAT (OF COLOR) vs. G. W. COONS.

1. A will made in another State, by a person then a resident of such State, but who afterwards removes to this State, and dies a resident of this State, is invalid, if not made according to the laws of this State.

2. Such a will, if made according to the laws of this State, need not be republished in this State, upon the removal of the maker to this State.

3. A copy of the probate of such a will, made in the courts of another State, is of no effect in this State.

## APPEAL from St. Louis Circuit Court.

TOWNSEND, *for Appellant, insists:*

1. The judgment is erroneous, because a *material issue* joined between the parties was not found by the jury. See Fenwick vs. Logan, 1 Mo. R., 401; Easton vs. Collier, 1 do., 421; Jones & Jones vs. Snedecor, 3 do., 390; Foster & Foster vs. Nowlin, 4 do., 18; Pratt vs. Rodgers, 5 do., 51.

2. The plaintiff showed a right to his freedom as against the defendant, because,

First, Both of the copies of the will offered in evidence by the plaintiff were competent evidence. The first, which was a copy of the *record of the will*, as recorded in the office of the Probate Court of St. Louis county, was competent evidence under the statutes of this State. See Rev. Stat. of 1845, title Wills, sec. 28, 29, 35 and 36.

The second, which was a copy from the office of the Probate Court of Warren county, State of Mississippi, was competent evidence under the laws of the United States, agreeably to which it was authenticated as a *judicial proceeding* of a court of record of the State of Mississippi, and likewise competent evidence under the laws of this State. See Rev. Stat. of 1845, title Wills, s. 28, 29, 35 and 36, and the act of Congress; also, Bright, *et al.* vs. White, 8 Mo. R., 422.

The extracts from the laws of Mississippi preserved in the bill of exceptions and offered in evidence on the trial, show that the probate was duly made before the proper court, and that the original will could not be had.

Second. The validity and effect of the will is to be decided upon by the laws of the State of Missouri, where the testator was residing at the time of his death, and where his negroes, as well as other property, were locally situate, and not by the laws of Mississippi. See Story's Conf. L. pages 62, 63, 64, 65, 66, 67, 312, 314, 391, 394, 398, 403. The case in 7 Louisiana Rep., 135, (Wheeler, 311) cited by Mr. Spalding, does not contradict these authorities, inasmuch as it appears from that case that the testator died in the State of Georgia, and was domiciliated there at the time of his death.

3. According to the laws of this State, the will effected a full and perfect emancipation. See Rev. Stat. of 1835, title Slaves, art. 2, sec. 1, 2, 3, 6.

4. The will is not merely directory, but *ipso facto*, works an immediate emancipation upon the testator's death. See 1 Gill & Johns., 390.

5. The evidence offered by the defendant, therefore, was entirely irrelevant, as it showed no authority for the defendant's holding the plaintiff in slavery, nor any justification or excuse thereof.

6. The defendant stands in the shoes of his testator, and even were the emancipation void as to

*Nat (of color)* vs. *G. W. Coons.*

the creditors of the testator, the defendant is not in a situation to avoid it, but deriving his authority from the will, is bound by it, and cannot hold the plaintiff in slavery, contrary to its provisions.

7. The law has taken care of the rights of creditors by providing that slaves emancipated by any deed or will shall be liable to be taken in execution to satisfy any debt contracted by the person emancipating them prior to the act of emancipation. Rev. Stat. of 1835, title Slaves, art. 2, sec. 3.

8. But if the plaintiff's right to his freedom depends upon the sufficiency of the assets of the testator, exclusive of his slaves, to pay his debts, and in default of such assets, the defendant had a right to hold said slaves in slavery, then surely the evidence offered by the plaintiff to show that no such deficiency of assets existed, 'was entirely competent and ought to have been received.

9. If there was no original deficiency of assets, surely the defendant ought not to be permitted to take advantage of his own wrong, by alleging, as an excuse for holding the plaintiff in slavery, a deficiency of assets, which he himself had produced by his waste and misconduct.

10. But surely it was competent for the plaintiff to show that some of the demands originally established against the estate had been subsequently disallowed, and were not, at the the time of the trial, debts against the estate.

11. The evidence given upon the trial showed an amount of assets in the hands of the administrator far exceeding the debts remaining unpaid, none of which assets were shown to be unavailable.

SPALDING, *for Appellee, insists :*

1. The first error assigned cannot be sustained. It is upon the finding of the jury that the *"defendant is not guilty of said several grievances, or either of them, in manner and form,"* &c.; and nothing is said of the second issue on the plea that the plaintiff was not a free person at the commencement of this suit.

First. The record shows that only one issue was submitted to the jury, and on that one they found. The act of submitting the issues was the act of the parties; if they chose to drop the second issue and go to the jury on one only, they ought not to be permitted afterwards to object; where all the issues are submitted, and the jury fail to respond, it is different.

Second. The court below never passed upon the point, and therefore this Court cannot take notice of it. 1 Mo. Rep., 283, 350, are cases where motion in arrest was made, but none was made here. The cases where the Court has reversed, are cases of several material issues, *all submitted to the jury,* and the jury failed to find as to some of them. 9 Mo. Rep., 632; but it must be otherwise where the jury were not sworn on all the issues.

Third. But the issue found embraced the whole case; and if the jury had found for plaintiff on the second issue, the judgment must have been given for the *defendant.* See Rev. Code of 1835, title Freedom; 1 Mo. Rep., 115, Tate vs. Barcroft; 1 Mo. Rep., 419, Wear vs. McCorkle.— Where judgment is for the right party on the whole record, Court will not reverse. 1 Mo. Rep., 534, Wathan, *et al.* vs. English; 9 Mo. Rep., 632; 1 Mo. Rep., 223. 5 Mo. Rep., 51, 477.

2. The will of Milton Duty does not free the slaves, but only provides they shall be manumitted on the happening of a certain event, and they were never manumitted.

3. But even if the will does emancipate them, yet the emancipation was conditional and contingent, and *was to take effect only after the payment of all the testator's debts,* for this is the express provision of the will. 2 Har. & Gill, 1; (Wheeler on Slavery, 327;) 2 Leigh's Rep., 189; (Wheeler, p. 315.)

4. At the time the suit was brought, and even at the time of trial, the debts were not all paid. Only 51 per cent. had been paid on the debts in the 6th class, and nothing on the debts in the 7th class, and nothing on the debt of Strong, which was pending on appeal in the Circuit Court.

5. The testimony offered and rejected, that there were assets enough and money enough in the administrator's hands to pay the debts, and that the administrator had committed waste, &c., was irrelevant, as the freedom depended by the will on the *actual payment of the debts*, and not on the fact that there were sufficient assets to pay them. Those assets may be all squandered, and the securities of the administrator be insolvent. In truth, it is not known even to this day but that Nat will have to be sold to pay the debts. Yet, by the will, he was not to be free *'till the debts should be paid*. The record shows that the *plaintiff* admitted the debts were not paid, and also gave in evidence the latest settlements with the Court of Probate made after this suit was brought, which showed debts still unpaid.

6. But the will being made in Mississippi, with reference to the laws of emancipation of that State, and admitted to probate in that State, must be considered as controlled by the laws of Mississippi; and when an exemplification is brought here, it will operate as if in Mississippi, and if it does not set free the slaves there, it does not do it here. 7 Louisiana Rep., 135; (Wheeler, 311.)

7. The will is not so executed and authenticated as to effect the emancipation of Nat. Rev. Code of 1835, page 619, secs. 19 & 20; Rev. Code 1835, page 587, secs. 1, 2, 3, 4, 5, 6, 7, 8.

8. The exclusion of the copy of the record of the will taken from the office of Probate in Missouri, is the second error assigned; but the act of the court was right, because it was *the copy of a copy of a copy*, and also *because the copy of the will was immediately offered and received in evidence*, as exemplified from Mississippi. The plaintiff, therefore, having given the copy of the will in evidence, cannot complain that *a copy of a copy of that copy* was rejected; besides, no objection was specified. 8 Mo. Rep., 128.

9. The admission of the copy of the letters of administration, with the will annexed, was not erroneous. That was the authority of the defendant to hold the slaves. He was sued as trespassing on the rights of Nat, and an emancipation by Duty's will alleged as the title of Nat. His defence was to show an administration pending and debts unpaid, and the production of the letters was his first document in order.

10. That a copy of abstract of demands allowed and of settlements made, was admitted, is the 4th error assigned, but this was surely evidence relevant to prove debts unpaid, and it was competent, being copies of records required by statute to be kept. Rev. Code, page 94, sec. 21, and page 96, sec. 1. But whether competent or not, this Court will not enquire, as the objection was general and specified no reason. 8 Mo. R., 128.

SCOTT, J., *delivered the opinion of the Court.*

Duty, the late master of Nat, executed a will in the year 1836, in the State of Mississippi, of which he was then a resident. By this will, Nat, with other slaves, were liberated after the payment of all the debts. Afterwards, in the year 1837, Duty, with his slaves, removed to the State of Missouri, where he resided until his death, in 1838. This will was admitted to probate in Warren county, in the State of Mississippi, and upon a production of that probate to the Clerk of the Probate Court in St. Louis county, the same was recorded, and thereupon letters testamentary, with the will annexed, on the estate of Duty, were committed to G. W. Coons, the appellee and defendant below. Nat contending that the debts of the estate were paid, or that there was a sufficiency of assets to satisfy them without selling the slaves, under leave, instituted a

*Nat (of color)* vs. *G. W. Coons.*

suit for his freedom in which judgment was rendered against him, from which he appealed to this Court.

It is a principle recognized in the American law, that a will, in order to be valid, must be executed according to the law of the testator's domicil at the time of his death. · 1 Bin., 336; Story's Conflict, 394. It is not denied but that Duty, at the time of his decease, was domiciliated in this State. His will, then, must have been executed according to our law. Having made a will in Mississippi, which was in conformity to the laws of that State, if its mode of execution so far conformed to our law as to render it valid as if executed here, his subsequent removal to this State would not invalidate it, although there was no republication in this State. In such case, the will would be considered as having been executed here, and would be proceeded on accordingly. It would be regarded as a will made in Missouri. A statute in force at the date of this will authorized citizens of the United States or of the Territories thereof, to dispose of their property in this State, whether real or personal, according to the law of the State of their domicil or of this State. The will of Duty does not come within this provision. He, at the time of his death, was a citizen of this State, and the law was only intended for citizens of other States owning property in this State. If a citizen of another State make his will according to the law of that State, and should afterwards remove to this State, if the will made in the other State should not be executed according to the requisitions of our law, it could not be set up in our courts as his will.

An application of these principles will determine this cause. Without undertaking to say what effect the removal of Duty from Mississippi might have had on his will in that State, and admitting that it was so executed under the Mississippi law as to be as valid as if executed here, and that there was such a conformity in the modes of execution required by the laws of the two States, that a will executed under one law might be valid under the other, yet this was a Missouri will, and the original should have been proved in this State. No foreign copy was properly admitted in evidence, nor could a foreign probate confer any rights. If it was used as a will under the laws of Mississippi, it is clear that it could not confer freedom, as it appeared by the laws in force then that the assent of the General Assembly was necessary to an act of emancipation.

The case, then, falls within the principle that if, upon the whole, it appears that a judgment has been rendered for the right party in the court below, although there may have been error, it will not be reversed.

The other Judges concurring, the judgment will be affirmed.