Davies, J. (Dissenting.)
Benjamin F. Hunt, Senior, a citizen of and domiciled in the State of South Carolina, made and executed in that State, on the 14th of August, 1849, his last will and testament, according to the forms and solemnities required by the laws of that State.
The testator changed his domicil, in the winter of the year 1854, to the State of Hew York, and died in the city of Hew York in the fall of that year. His will, thus executed in the State of South Carolina, was presented for probate to the Surrogate of the county of Hew York, who granted letters thereon, as a will of personal estate. From that judgment an appeal was taken to the Supreme Court, which affirmed the decision of the Surrogate; and from this latter judgment an appeal has been taken to this court. The question for our decision is one of novelty and of grave importance. It is somewhat surprising that it has never been presented, in the precise form in which it now arises, for adjudication in our courts. Similar cases must have arisen; and it cannot be doubted that, here *410 after, as the number of States shall increase, each having its own forms and solemnities for the execution of wills, and differing from each other, as most of them do, the attention of the courts will be invoked to an investigation of the principles which should govern in the probate of wills, executed according to the forms of one locality and sought to be established in another having different forms. The precise question prel sented for decision in this case is, whether a will of personal estate, duly executed in conformity to the laws of the State where it was made, and in which the testator was domiciled at the time of its execution, is revoked, or rendered invalid, by a change of domicil into another State, where different forms and solemnities are required for its valid execution. This subject has received from the learned Surrogate in this case a most elaborate and careful examination, and it is difficult to add anything to the able and conclusive reasoning employed by him. The review of the principles applicable to the question, and of the authorities bearing upon it, is exhaustive and unanswerable. What is already made plain and satisfactory, can hardly be strengthened.
• The rule is well settled that, to make a valid disposition of immovable property, or real estate, by deed, or by a last will and testament, the lex loci rei sites must govern, and the instruments must be executed in conformity to that law. So the capacity of the testator to make a will must depend upon the law of his domicil at the time of his death, and his condition at the happening of that event. (Story on Conflict of Laws, § 473, and authorities there cited.) Upon the question now under consideration, the authorities referred to by the Surrogate, from the writers on the civil law, have been collated by him with great research and care; and such of them as it has been convenient to examine, fully sustain the positions for which they are cited. Some of the civilians hold that, even as to real estate, the will is to be held valid everywhere, if executed according to the forms and solemnities of the place of its exe- . cution. Voet says, in reference to a similar case: “ Thus, if a ■Hollander in Holland disposes by will of his real estate in *411 Utrecht, it ought to have effect as his will, because he observed the requirements of the law of the place in which the act of making the will was performed. Uor will it be weakened if, after his last testament has thus been made, in Holland, he may remove to Utrecht; for when the testament found in Holland is there executed according to the Holland customs it remains valid, even after his return to his own country; for, if there be no other objection, it would be unjust that, solely by the migration to a place requiring different legal forms, an act, before valid according to law in the place of the former domicil, should be void or broken.” (Lib. 28, tit. 1, §27.) Van Leeuween, in his Commentaries on the Roman Dutch Law, and which were translated into English in 1820, expressly for the benefit of the English judiciary in the island of Ceylon (1 Kent’s Com., 515), has this passage: “Hence this question has arisen, whether a will, made according to the practice required at the place where it is effected, as in Holland for instance, having been duly confirmed before a notary and two witnesses, ought likewise to take effect in other places where other and more numerous solemnities are required, as, in Fries-land, where the number of witnesses required is seven. * * And, upon the general opinion of the Doctors, it'was understood that a will, confirmed at a certain place according to the solemnities required there, takes effect everywhere, without distinction, because the solemnity required to the existence of anything belongs to the knowledge or jurisdiction of the government of that place where it ought to be observed; and if a person be obliged to follow the practice of different places, any person who lives, now at this and then at another place, would be obliged to make so many wills, or to observe different forms in one and the same will; and a will which is but a single act would be judged of according to different forms of law.” (Com., 215.)
Du Moulin states the rule to be, “ That it is the opinion of all lawyers, that whenever custom or local statute settles the form or solemnity of an act, even strangers performing that act are bound by it, and the thing done is valid and effectual *412 everywhere, even in relation to landed property beyond the territory of the custom or the statute.!’ (Cited in Story’s Confl. of Laws, § 441.) G-rotius says: “ That when there is any question concerning the form or solemnity of the -testament, the place where the thing is done is to be regarded in establishing the will.” (Epis., 467, in 4 Binge Com., p. 220.) The rule is very clearly stated by M. Toullier,- who says: “ In fine, it should be observed, that the forms of wills do not depend either upon the law of the domicil of the testator, nor upon that of the goods which are disposed of, nor of that of the place where the testator inhabits at the time of his death. It depends only upon the law of the place at the time of the making or execution of the will.” (Le Droit Civil Francais, vol. 5, p. 290, § 382.) It is unnecessary, further,’ to quote from the writers on the civil law upon this subject. The references made by the Surrogate are so full, that any one having a desire to pursue this train of investigation, will find jn his opinion in this case the materials at hand.
Judge Stoey, in his Commentary on the Conflict of Laws, in section 473, has stated a different rule. His language is so broad and general that he is to be regarded an authority to sustain the contrary doctrine. He certainly asserts the broad principle, that it is the law of the testator’s actual domicil at the time of his death, and not the law of his domicil at the time of making his will or testament of personal property, which is to govern. With high respect for the views of that distinguished jurist, I fail to see that the_ authorities cited by him to sustain his text, go to that extent. A careful examination of them has satisfied me that they refer to the status or capacity of the testator, and not to the formality of the execution ; though the language used by him is sufficient to embrace both capacity and forms or solemnities. Story .himself quotes, approvingly, from Vattel, who says: “ As to the forms and solemnities appointed to settle the validity of a will, the testator ought to observe those which are established in the country where he makes it.” (Story on Confl. of Laws, §§ 471, 472.)
*413 A careful consideration of the provision of the statutes of this State will satisfy the mind that the legislature were aware of the conflicting views entertained relative to wills executed in one state and offered for probate in another. The Revised Statutes, as amended in 1830 (Session Laws, p. 386), autho rize the taking of the proof of wills, which shall have'been ■ executed according to the laws of this State, when the witnesses to the same reside without the jurisdiction of this State, by a commission to be issued out of the Court of Chancery, This provision is alike applicable to wills of real as personal estate; and if the legislature had not intended to make a different rule as applicable to wills of the latter description, no further legislative action was required. If it did not mean to permit wills of personal estate not executed according to the laws of this State, to be established as valid dispositions qf property here, legislation would have stopped at this point. The subsequent provisions show, I think conclusively, that the legislature did intend that wills of personal estate, executed by persons residing out of the State at the time such wills were executed, if made in conformity to the laws of the State where executed, should be proved and" established in like manner as wills of both real and personal estate, executed out of this State, according to the laws of this State. Section 68 (Laws of 1830, p. 389) provides, that wills of personal estate; duly executed according to the laws of the state or country in which the same were made, by persons residing out of this State, may be proven and established in like manner as wills thus made and executed according to the laws of this State. The next section (69) is in its nature restrictive, for it declares that no will of personal estate, made out of this State by a person not being a citizen of this State, shall be admitted to probate under either of the preceding provisions, unless the will shall have been executed according to. the laws of the state or country in which the same was made. It is here to be observed, that all these provisions' of the statute have reference to the status or condition of the person making the will, at the time of its execution, and not to the period of the *414 death of the testator; and secondly, that they refer solely to the law of the place, state or country where the will was executed, prevailing at the time of its execution. The latter principle is expressly declared by section 79 (2 R. S., p. 68), which provides that the provisions of this title shall not be construed to impair the validity of the execution of any will made before that chapter took effect.
To recapitulate: These provisions of the Statutes authorize wills executed out of this State, .both of real and personal estate, if executed according to the laws of this State, to be established here, with the same effect as if executed within this State, except that, as to wills óf personal estate, made by persons not being citizens of this State at the time of executing the same, they shall not be established unless such will shall have been executed according to the laws of the state or country in which the same was made. A citizen of this State may, therefore, have his will of personal estate, made and executed in another State, established'here as a valid will, if the same be executed either according to the laws of this State or according to the laws of the State where the same is made; but a person, not being a citizen of this State, cannot have established here a will as a valid will, of personal estate, made and executed in another State, unless the same shall have been executed according to the laws of the State where made. An execution according to the laws of this State, in the latter case, will not meet the requirements of the Statute. It is thus seen that our own citizens, and those who are not, are placed upon the same footing as to the forms and solemnities touching the execution of wills of real estate, when the same are, executed without this State. To. establish them here, they must be executed according to the laws of this State. This legislation is in harmony with the principle already adverted to—that, to make a valid disposition of real estate, either by deed or testament, the lex loci rei sites must govern—and in opposition to that enunciated by the civil law writers already quoted. But, in reference to wills of personal estate, executed without this State by a citizen of this State, they are equally valid whether exe *415 cuted according to the laws of this State or according to the laws of the state or country where the same are made; while wills of personal estate, made by persons not citizens of this State, and executed without this Staté, can only be established here where the same shall have been executed in conformity with the laws of the State where made. A greater privilege is thus accorded to citizens of our. own State, making wills of personal estate in other States, than to persons not citizens of this State. The reason for this may be, that the legislature assumed that our own citizens would carry with them a knowledge of the forms and solemnities touching the execution of wills prevailing in this State, and that it might well be optional with them whether they would adopt these forms, or those which obtained in the State where, and at the time, the will was executed. But no such presumption could arise in reference to citizens of other States, who might well be assumed to have no knowledge of the peculiar forms in relation to the execution of wills required by the local law of this State, or any means of access to the law prescribing those forms. It would be assumed that they knew the law of the State or place where the act was done; and, therefore, the legislature have determined that, as to them, a compliance with the lex bci actus is all that is required to give validity to the will in this State. A different rule would be fraught with the most serious incon veniences and hazards. Especially would this be so, in this country, where we have thirty-four independent States, or sovereignties, each having its peculiar laws on this subject, and requiring forms prescribed by its own legislation to give validity to wills sought to be established in its jurisdiction It is also to be borne in mind that our citizens are constantly changing their domicil from one State to another, and that it is not unfrequent for a person to have domicils in several States "Within the same year. Living, as we are, under one government, fraternally bound together as one people, and united by the most intimate social and business ties, these changes must be frequent and sudden. How grievous would be the hardship, therefore, to require a citizen who, upon *416 mature consideration, has made a valid and perfect will, in accordance with the laws of the State of his residence, and with which he may be assumed to be well acquainted, upon a change of domicil to another State, which may be of short duration, to make another will, or reexecute the one previously made, in accordance with the laws of the new domicil, and so on as often as he may remove to another State. If this rule be adopted, that change of domicil works a revocation of the • previous will and renders invalid what before was legal and perfect, no other means of safety is left to him if he would not die intestate. Van Leeuwen,' already quoted, foreshadowed the inconveniences of such a rule when he said: “If a person be obliged to follow the practice of different places, any person, who lives now at this and then at another place, would be obliged to make so many wills, or to observe different forms in one and the same will; and a will, which is but a single act, would be judged of according to different forms of law.” If such consequences were legitimately anticipated by that writer, in reference to the people with whom he was most familiar, how much more aggravated will they be if the principle is made applicable to a country like our own, and to the enterprising, active and restless people who inhabit it. Nothing but imperative necessity should induce us to recognize the existence of such a rule; and, if I am correct in the views heretofore expressed, it has been found to be condemned by the ablest writers on the civil law, and is in direct hostility to the- legislation of our own State. The authorities cited to maintain the contrary doctrine have failed to satisfy my mind of the soundness of the conclusion. The text of Judge Story, mainly relied on, has already been adverted to. The only adjudged case in this country cited by the counsel for appellants is that of Nott v. Coon (10 Mo., 543), in which it was held that a will, made in another State by a person then resident in such State, but who afterwards removed to Missouri and died a resident thereof, was invalid, not being made according to the law of Missouri. It does not appear upon what precise ground this decision was *417 made, nor whether the will related to real or to personal estate. If to the former, the case was clearly decided in conformity with the universal rule that the lex loci rd dice is to control. It would be sufficient to say, if the will related solely to personal estate, that it does not appear that a statute similar to our own existed in Missouri. In Desebats v. Berquier (1 Binn., 336), the decedent was an inhabitant of St. Domingo, at the time of mating the will, and at the time of his death; and the instrument, though sufficient in form to pass personal estate in Pennsylvania, was declared invalid. But it was not valid by the law of St. Domingo, and, therefore, conformed neither to the lex loci actus nor to the lex domicilia. Some of the English cases, as has been shown by the learned Surrogate, present the precise question which arises in this case; and the reasoning of the judges in the cases referred to shows that their opinions proceed upon principles inapplicable to our institutions and the habits of our people.
The case of Roberts’ will, reported in 8 Paige, 446, and decided by the Chancellor in July, 1840, if the facts presented are carefully considered, will be found to be in harmony with the views already expressed. In that case the will was made by Roberts, in the Island of Cuba, in 1825. It was a will of personal estate, and executed according to the laws of that Island. Subsequently the decedent removed to this State and died here in 1837. He was a resident of this State at the time of his death. The will was not executed in conformity with the laws of this State, in force at the date of the will, or at the time of Roberts’ death. The Chancellor having found that the will was duly executed according to the law of the testator’s domicil at the time of its date and execution, made a decree establishing the instrument propounded, as a valid will of personal estate. I cannot but regard this case as an authority in point adverse to the views of the appellants, notwithstanding the remark made by the Chancellor, when he says that the provisions of our statutes relative to the execution of wills, do not apply to wills executed out of this State, by persons domiciled in the state or country where the will is made, *418 and adds, “ and who continue to he thus domiciled at the time the will talces effect hy death." I fail to see that the case of De Bonneval v. De Bonneval (1 Curt. Eccl. R., 856), cited as authority for this proposition, maintains it. It appears to me that the precise point decided in that case was, that the deceased was originally domiciled in France, and that no change of domicil had taken place: and that although he died in England, yet the validity or invalidity of his will must be determined by the French tribunals, and not by the courts in England; and that it was for them to determine its validity and the succession to his personal estate. Nothing is said of the effect of a change of domicil, upon the validity of a will executed according to the form of a previous domicil. That the Chancellor regarded the rule to be as I have stated it, is I think to be drawn from the subsequent case of the will of Boberts’ wife. (8 Paige, 519.) The issue directed by the Chancellor to. be formed and tried was, “ whether the decedent was domiciled in Cuba or in this State', at the time such will and codicil purported to have been executed,” they not having been executed in the form prescribed by the Bevised Statutes of this State. In this case the Chancellor says, that there is a difference of opinion among foreign jurists, whether a will of personal estate, or movable property as it is called by the civilians, in which the testator has complied with the forms and solemnities required by the lex loci actus, is a valid testamentary disposition of such property, although in the form of its execution, such will does not conform to the requirements of the law of the testator’s domicil. (The domicil' here referred to, must mean that of the testator’s death.) He proceeds to say, that the better opinion however appears to be, that so far as regards the mere formal execution of the testament, it is sufficient if it conforms to the law of the country where the will is made, in accordance with the maxim, locus regit actum. These views of'the Chancellor coincide with those of the Surrogate in the present case; and finding no authority in hostility to them, I think they should receive the sanction of this court, for the reasons already urged. It seems to be an authoritative deci *419 sion, holding that a will of personal estate duly executed according to the law of the testator’s domicil, at the time of its date, and valid there, is not revoked by a change of domicil to another state or country where different forms are required. In this connection the provisions of our statute, on the subject of the revocation of wills, are not without significance. They are, that no will — that is a legal and valid will, as it is deemed it has been conclusively shown this was, at the time of the change of domicil—shall be revoked, otherwise than by some" other will in writing, or other writing of the testator, executed with the same formalities with which the will itself was required' by law to be executed. We have seen what those formalities were, when the will was executed in this State, and when made out of it, by a citizen of this State, and by persons not citizens. The Statutes also provide for a revocation in other modes therein enumerated. (2 R. S.,. § 42, p. 64.) Now it is not declared by the legislature that a change of domicil shall work a revocation of a valid will; and the principle of exjoressio unius est exclusio alterius may be applied here with great force and propriety. If the legislature" had intended such should be the law—it is reasonable to infer—while legislating on the subject of revocation of wills, it would have so declared. This will, at the time it was made, was required by law to be executed in the precise form in which it was in fact executed, and it was then a complete and valid will; and the inquiry presents itself, how has it been revoked, and by what process has it lost "its completeness and legal force ? — Certainly by no act of the testator himself, directly tending to that result, or indicating any such intention; nor by any of the processes pointed out by our Revised Statutes, to effectuate such a purpose. Such revocation is sought to be maintained from the sole circumstance of a change of domicil to a State where different forms are required for the valid execution of a will, but upon whose statute books it is declared that wills of personal estate, if executed out of this State according to the laws of the place where executed, shall be valid, and that the same shall not be deemed revoked *420 unless by an instrument in writing, executed with the same formalities.
I am unable to see any reason upon principle or authority, why such a change of domicil .should be held to be a revocation of a will. I think the legislature have in effect declared that it shall not, and that a will valid at the time of its execution, remains such, unless revoked in the manner and with the forms prescribed.
.The judgment of the Supreme Court should therefore be affirmed, with costs.
Selden and Mascot, Js., also dissented.
Judgment of the Supreme Court and of Surrogate reverged.