CAMPBELL, *Appellant*, v. POPE *et al.*

1. **Corporations, Acts of how Authorized.** The acts of the board of directors of a corporation, evidenced by a written vote, are as completely binding on the corporation, and are as complete authority to its agents as the most solemn acts done under the corporate seal.

2. **Corporation, Ratification of Unauthorized Acts of Agent by.** If a corporation ratify the unauthorized acts of its agent, the ratification is equivalent to a previous authority, as in the case of natural persons ; and such ratification need not be by any formal vote or resolution of the corporation, or be authenticated by the corporate seal.

3. ————. Where a corporation is brought into court by service of summons on its president or other chief officer, as authorized by statute, it will be held to know what transpires in the suit, and where an appeal bond has been executed for it, in such case, by its president without affixing the corporate seal, and it is represented by its counsel in the appellate court two years after the appeal was taken, it will by its knowledge and acquiescence in the act of its president be held to have ratified and adopted it, and the bond will be as valid as if the corporation, through its directors, by resolution or vote, had authorized it to be executed in that way.

4. **Judgment, Assignment of:** SATISFACTION: CHARTER OF ST. LOUIS. Under a provision of the charter of the city of St. Louis. (2 R. S. 1879, p. 1626, sec. 9) declaring that a joint judgment, against the city and other defendants, in certain cases, shall be enforceable against the city only in the event that payment cannot. be enforced against its co-defendants, payment by the city comptroller, out of the city's funds, for the assignment of a judgment in such case to the city for the purpose of keeping it alive that it might be enforced against the other defendants, is not a satisfaction of such judgment.

*Appeal from St. Louis City Circuit Court.*—HON.. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Leverett Bell* for appellant.

The plaintiff's right to recover was not impeached. The original judgment was not paid nor satisfied. It is in full force and effect. The plaintiff had a lawful right to purchase the judgment. The amount paid by him for it is not material. It is sufficient that he is the lawful owner of it. The defendants have presented no grounds excusing them from liability on the appeal bond. The source from which the plaintiff derived the means to purchase the judgment is immaterial. The city of St. Louis is not the primary debtor in the judgment in the Grogan case. Its liability is secondary to that of the other defendants therein. No enforcement of the judgment can be had against the city of St. Louis until all remedies against the other defendants in the judgment are exhausted. Charter of St. Louis, art. 16, sec. 9.

*Taylor & Pollard* for respondents.

(1) The object and intent of the bond was not to protect the city, but to insure 'Mary Grogan in getting her judgment. Since one of the joint judgment debtors equally liable to her has satisfied the judgment in full, the object and intent of the bond has been accomplished ; and as the judgment has been discharged, no liability exists against the sureties. (2) The Pope Iron & Metal Company had a common corporate seal, and the bond in question was not executed under that seal, therefore it was void as to the principal and sureties. Wood's Field on Corp., secs. 252, 253 ; Thompson on Liab. of Officers of Corp. 100, 101 ; *Sandford v. Tremlett*, 42 Mo. 388 ; *Southern v. M. B. A.* 52 Cal. 192 ; *Abbey v. Chase*, 6 Cush. 54. (3) Assuming that the instrument sued on is a sealed one, then no legal title passed to plaintiff, since the alleged transfer is not under seal. The instrument

making the transfer must be of as high a nature as the instrument transferred.  *Wood v. Partridge*, 11 Mass. 490.

NORTON, C. J.—The record discloses the following facts: That on the twenty-third of March, 1882, one Mary Grogan recovered judgment in the St. Louis circuit court against a corporation, known as the Pope Iron & Metal Company, and a corporation named the Broadway Foundry Company, and the city of St. Louis, for thirty-five hundred dollars, for the death of her minor son, occasioned by the negligence of defendants; that an appeal from said judgment was prosecuted to the St. Louis court of appeals, where the judgment of the circuit court was affirmed, and from this judgment of affirmance, the said Pope Iron & Metal Company prosecuted an appeal to this court, which resulted in an affirmance of said judgment; that on taking said appeal from the judgment of the St. Louis court of appeals to this court, an appeal bond, of which the following is a certified copy, was given, to-wit: "Know all men by these presents, that we, Pope Iron & Metal Company as principal, and Richard C. Pope and H. W. Burton as sureties, are held and firmly bound unto Mary Grogan in the sum of eight thousand dollars, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents, sealed with our seals and dated at St. Louis this nineteenth day of June, 1883. The condition of the above obligation is such, that whereas Pope Iron & Metal Company has appealed from the judgment rendered against it and in favor of Mary Grogan in the St. Louis court of appeals.   Now if said appellant shall prosecute its appeal with due diligence to a decision in the supreme court, and shall perform such judgment as shall be given by the supreme court, or such as the supreme court may direct the St. Louis circuit court in the city of St. Louis to give, and

if the judgment or any part thereof be affirmed, will comply with and perform the same as far as it may be affirmed, and pay all damages and costs which may be awarded against it by the supreme court, then this obligation to be void, otherwise to remain in full force and effect. Pope Iron & Metal Co. (seal) By R. C. Pope Pres. (seal) Richard Pope (seal) Harrison W. Burton (seal). Approved in open court this nineteenth day of June, 1883. Attest: Joseph F. Baier, clerk."

The judgment thus obtained, was duly assigned by said Mary Grogan to George M. Stewart, and was by said Stewart duly assigned to Robert A. Campbell, the plaintiff in this suit, who is and was at the time of said assignment, the comptroller for the city of St. Louis, and who paid out of the funds of the city the sum of $4,287.50 to said Stewart therefor. It also appears that said Mary Grogan, on the twenty-third of December, 1885, by her certain writing, sold, transferred and assigned all her right and interest in said appeal bond to plaintiff Campbell, and it is upon this appeal bond that he sues the parties who executed the same, alleging in his petition that the Pope Iron & Metal Company has not paid said judgment or any part thereof, and asking judgment on said bond for the amount of said judgment, interest and cost.

The defendants denied the execution of the appeal bond and further set up the defense that the Mary Grogan judgment, by virtue of the payment made by Campbell out of the funds in his hands as comptroller of the city of St. Louis, was in law satisfied. A trial before the court resulted in a judgment for defendants, and the cause is before us on plaintiff's appeal therefrom.

On the trial, among other things, it was proved that R. C. Pope, at the time he signed the appeal bond, was president of the Pope Iron & Metal Company, and that as such, he signed the name of said company to said

bond, and that he and Burton, who was also an officer of said company, signed the same as sureties. Pope, in his evidence, stated that he had not been authorized by the board of directors to sign said bond, and that the Pope Iron & Metal Company had a corporation seal.

It is claimed by respondents that the appeal bond in question, though signed and sealed as shown in the copy above given, was never executed by the Pope Iron & Metal Company, inasmuch as the seal of the corporation was not affixed thereto. "The old rule of the common law undoubtedly was, that corporations aggregate could contract, or appoint special agents for that purpose * * * only by deed. In England, this rule has in modern times been greatly, though gradually, relaxed; and in our own country, where private corporations * * * have been multiplied, beyond any former example, on account of the inconvenience and injustice which must, in practice, result from its technical strictness, the rule has, as a general proposition, been completely done away." Ang. & Ames on Corp. sec. 219.

While a seal of a corporation, affixed to a writing or contract executed by the proper officer of the corporation, is evidence that the contract or writing is a corporate act, and that the officer executing it did not exceed his authority, it seems to be nevertheless true, that if the officer executing the instrument for and in behalf of the company was authorized by vote or resolution to execute it, that such authorization would dispense with the necessity of affixing the corporate seal, inasmuch as such resolution or vote would as clearly, if not more so, indicate that the act was a corporate act, done by the authority of the corporation, as affixing the seal would indicate it.

"The acts of the board of directors, evidenced by a written vote, are as completely binding on the corporation, and as complete authority to their agents as the most solemn acts done under the corporate seal." 2

Kent's Com. 291 ; Field on Corp. sec. 283. " In general it may be laid down that not only the appointment, but the authority, of the agent of a corporation may be implied from the adoption or recognition of his acts by the corporation or its directors." Ang. & Ames on Corp., sec. 284. If a corporation ratify the unauthorized act of its agent, the ratification is equivalent to a previous authority, as in the case of natural persons. Such ratification need not be by any formal vote or resolution of the corporation, or be authenticated by the corporate seal. Thus, where the president of a railroad company established certain rates of fare and freight on a railroad, the corporation receiving and appropriating such rates, was held to have ratified the president's acts, and as tantamount to an original authority. *First National Bank of Springfield v. Fricke*, 75 Mo. 183.

In *Chouteau v. Allen*, 70 Mo. 290, it is held that notice to the officers of a corporation of the unauthorized acts of their predecessors in office is notice to the corporation, and if no dissent is expressed, ratification will be presumed and the acts become binding on the corporation. So in *Keiley v. Forsee*, 57 Mo. 390, it is said that it is a settled rule that not only the " appointment but the authority of the agent of a corporation may be implied from the adoption or recognition of his acts by the corporation."

In view of the principles above stated, and the fact that in the suit of Mary Grogan against the defendant corporation and others, the statute authorized it to be brought into court by service of summons upon its president or other chief officer, and in view of the fact that when thus brought in, it is held to know what transpires in the suit, and in this case, to the knowledge of the fact that it had taken an appeal from the judgment of the St. Louis court of appeals to this court, and that an appeal bond had been given to operate as a *supersedeas*.

and the further fact that this bond had been executed for it by its president without affixing the seal of the corporation, and that after the pendency of said appeal for two or more years in this court the judgment was affirmed,—in view of the above and the further fact, which appears from the report of the case in 87 Mo. 320, that defendant was represented by its counsel, we must hold that this knowledge and acquiescence in the act of its president, in executing the bond in question without attaching the corporate seal and in the manner it was executed and sealed, amounts to a ratification and adoption of the act, and gives to it by such ratification as much validity as if the corporation through its directors, by resolution or vote, had authorized it to be executed in that way.

It is next insisted that the evidence shows the payment out of the city funds in plaintiff's hands, as comptroller of the city of St. Louis, to Stewart, for the assignment of the judgment to him by Stewart was a satisfaction of the judgment, and that for that reason, no action could be maintained either by Mrs. Grogan or her assignee on said appeal bond, the condition of the bond having been fulfilled by the satisfaction of the judgment. Whether the payment made by Campbell was a satisfaction of the judgment depends greatly upon the intention with which it was made and upon the construction to be put on the following provision of the charter :

"Sec. 9.—Whenever the city shall be made liable to an action for damages, by reason of the unauthorized or wrongful acts, or of the negligence, carelessness, or unskillfulness of any person or corporation, and such person or corporation shall also be liable to an action on the same account by the party so injured, the injured party, if he sue the city for damages suffered by him, shall also join such other person or persons or corporation so liable, if residing in the state, so that they can

be served with process, as a defendant or defendants in his suit, and no judgment shall be rendered against the city unless judgment is rendered against such other person or corporation so liable to be sued as aforesaid ; and if any action be brought against the city alone, and it is made to appear that any person or corporation ought to be joined as a defendant in the suit, according to the provisions of this section, the plaintiff shall be non-suited ; but no person shall be liable under this act to be sued jointly with the city, who would not be liable to be sued separately, irrespective of its provisions. When a judgment shall be obtained against the city and the other party liable as aforesaid, execution shall issue against all the defendants in the ordinary form, but shall first be enforced and collected of the other defendants, and shall not be collected of the city unless the other defendants are so insolvent that the same cannot be made out of them, and in that case the city shall pay only so much of the judgment as cannot be made out of the other defendants." Charter of City of St. Louis, art. 16, sec. 9, R. S. 1879, p. 1626.

It is evident that, under this charter provision, the joint judgment rendered against the city of St. Louis, the Pope Iron & Metal Company and Broadway Foundry Company was only enforceable against the city by execution in the event that payment of the judgment could not be enforced against the other defendants. The liability of the city is contingent and made to depend on the fact that the other defendants in the judgment are insolvent, and in this respect, the city stands upon different ground from that occupied generally by joint tort-feasors.

Keeping this distinction in view, can the payment made by Campbell, with the funds of the city for the assignment of the judgment be held as a satisfaction of it ? This question must be answered in the light of the authorities. In Freeman on Executions, section 444, it

is said : " The voluntary payment of the amount due on a judgment or execution, if made unconditionally and without any reservation to keep the judgment alive, is unquestionably and irrevocably a satisfaction of the writ no matter by whom the payment is made." This authority is recognized in the case of *St. Francis Mill Co. v. Sugg*, 83 Mo. 476, where it is incidentally held that if, on the payment made in that case, an assignment of the judgment had been taken, it would not have operated as a satisfaction of the judgment. In Freeman on Judgments, section 472, it is said : " Whether one of the several persons against whom a joint judgment has been recovered, may pay the judgment and keep it on foot *by any means or for any purpose*, is a question upon which the authorities are very equally divided." It is held in New York, in case of *Harbeck v. Vanderbilt*, 20 N. Y. 395, that " when one of several defendants against whom there is a joint judgment, pays to the other party the entire sum due, the judgment thereby becomes extinguished, whatever may be the intention of the parties to the transaction. If, therefore, in such a case a defendant take an assignment to himself, or, unless *under special circumstances* even to a third person for his own benefit. the assignment is void and the judgment is satisfied."

The rule laid down in New York *seems* to be recognized in Massachusetts and is distinctly affirmed in Alabama and North Carolina.

On the other hand, in the case of *Coffee v. Tevis*, 17 Cal. 239 ; *Wheeler's Estate*, 1 Md. Ch. 80 ; *Brown v. White*, 5 Dutch. [N. J.] 516, the right of any defendant to furnish money to pay the whole judgment by taking an assignment to a third person, to employ the judgment as a means of enforcing contribution from his defendants, is distinctly and confidently affirmed. The right to subrogate in such cases is made to depend

Campbell v. Pope.

only on the intention of the debtor in making the payment.

The same doctrine is announced in the case of *McIntyre v. Miller*, 13 M. & W. 728, when this question underwent investigation, where it is said: "To construe that as a payment which was meant to be an assignment is a contradiction in terms."

Viewing the transaction or payment in this case in the light of the intimation made in the New York case above referred, to that, under special circumstances, a payment could be made and an assignment of the judgment taken to a third person that would not operate as a satisfaction of the judgment, the "special circumstances" referred to may be said to exist in this case considering the relation that the city of St. Louis sustained to its co-defendants, the Pope Iron & Metal Company and Broadway Foundry Company as to its ultimate and contingent liability on the Mary Grogan judgment. Viewing it in this light and in the light of the line of authorities last cited, and the intimation contained in the case of *St. Francis Mill Co. v. Sugg*, *supra*, that the character of the payment must be determined by the intention with which it was made, we must and do hold that the payment made by Campbell for the assignment of the judgment was not intended to be a satisfaction of the judgment, and that the assignment thereof to him was made for the purpose of keeping the judgment alive, so that it might be enforced against the co-defendants, who under the judgment and charter provision above quoted, were primarily liable for its payment.

The trial court, as shown by the instructions given, held that the judgment was satisfied by the payment made by Campbell and tried the case on a different theory from that herein announced, and the judgment is hereby reversed and cause remanded. All concur except RAY, J., absent.