STATE OF MISSOURI, ex rel. CLARENCE I. SPELLMAN, Administrator, Respondent, v. PARKE-DAVIS & COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, June 14, 1915.

1. ATTACHMENTS: Principal and Surety: Bond. The administrator of Mullett brought this action on attachment bond, which was executed by the defendant's manager at the time an attachment suit was instituted by defendant company against Mullett. The defendant denies liability on the bond on the ground that the execution thereof was never authorized nor thereafter ratified. *Held*, that the defendant by pressing the litigation, of which the bond is a part, ratified the execution of the bond.

2. —————: —————: —————. The authority of an agent to execute a bond required by law to be under seal, must be shown and conferred by an instrument executed with the same formality. Ratification cannot be established by anything less than a writing under seal, provided, there is no element of equitable estoppel involved.

3. STATUTE OF FRAUDS: Sales on Contracts of Corporations. The contracts which the Statute of Frauds requires to be in writing, must be in writing, but as the Statute of Frauds does not require contracts within its purview to be under seal the contracts of corporations even for the sale of land do not have to be under seal.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Chas. M. Woodruff, James Cleary* and *Johnson & Lucas* for appellant.

*Jos. S. Rust* and *E. Wright Taylor* for respondent.

TRIMBLE, J.—This is a suit upon an attachment bond. The defendant denies all liability thereon upon the ground that execution thereof was never authorized nor thereafter ratified. Upon a trial in the circuit court, the defendant's demurrer to the evidence was overruled and judgment was rendered in favor of plaintiff in the sum of $745, from which the defendant has appealed. To clearly understand the case it is necessary to make a full statement of the facts out of which it grew.

The defendant is now, and was at the times hereinafter mentioned, a Michigan corporation with a branch house in Kansas City, Missouri. In the course of the business of this branch house, it had, at some time prior to May 29, 1905, acquired a note of Fred Mullett. J. P. Raymond was the general manager of said branch house, and he authorized a suit on said note to be brought by original attachment against Mullett, the latter being a resident of California. The attachment suit was filed on the above-named date, having for its grounds the nonresidence of Mullett. No summons was served upon him, but jurisdiction was obtained by levying the writ of attachment on certain property of Mullett's and garnisheeing certain of his debtors. The affidavit verifying the copy of the note attached to the petition was made by Raymond as "Manager of Parke-Davis & Company, the plaintiff named in the petition attached hereto." He also signed and swore to the affidavit for the attachment wherein he stated that "defendant is not a resident of the State of Missouri."

The attachment bond was in regular form, purporting to be from "Parke-Davis & Company, a cor-

poration, and J. P. Reymond, as security" and was signed thus:

"Witness our hands and seal this 29th day of May, A. D. 1905.

PARKE-DAVIS & Co., by    (seal)

J. P. REYMOND, *Manager*,  (seal)

J. P. REYMOND.       (seal)"

It was approved by the circuit clerk on the same day.

Thereafter a trial of the suit was had, resulting in a judgment for the defendant. Thereupon the local Kansas City attorneys, who had brought the suit for Parke-Davis & Co. at the request of Reymond, sought permission from said company at the home office to appeal the case. Parke-Davis & Co. referred the matter to their general counsel who authorized the case to be appealed to the Supreme Court of Missouri. This was done, and the case was duly presented to that court where the judgment of the circuit court was, after several years, finally affirmed. The affidavit for appeal was made by J. P. Reymond as "agent at Kansas City of Parke-Davis & Company, plaintiff in the above entitled action." The bond for appeal was made with Parke-Davis & Co., as principal, with J. P. Reymond and Chas. F. Ayre, as sureties and the bond was signed "Parke-Davis & Co., by J. P. Reymond, Manager" and then by both J. P. Reymond and Chas. F. Ayre individually.

After the affirmance of the attachment suit Mullett died, and relator Spellman was appointed his administrator, and thereupon the present suit on the bond was instituted. Reymond, defendant's local manager, who executed the bond also died.

The object of the suit is to hold Parke-Davis & Company liable as principal on the bond. Plaintiff does not claim that Parke-Davis & Company authorized Reymond to execute the bond, but that after it was executed, the defendant corporation ratified his execution thereof by litigating the case in which the bond

was given and by carrying the case on appeal to the Supreme Court and presenting it there.

The theory of the defense is that the instrument is not under the corporate seal of the defendant; that as to corporations, no instrument executed by them can be considered a *bond* unless it is so made as to be strictly within the old common-law definition of a bond, namely, an obligation in writing under seal; that it is a rule of the common law that authority to execute an instrument under seal can be conferred only by a writing under seal, and, therefore, defendant's agent, Reymond, had no authority to execute the instrument sued on; and, as he was never authorized to execute said instrument, nothing done on the part of defendant can ever amount to a ratification unless it is also evidenced in writing and under seal.

There is no doubt but that, under the common law, an instrument in writing is not a bond unless it is under seal. [State ex rel. v. Clay County, 46 Mo. 731; State ex rel. v. Chamberlain, 54 Mo. 338; State ex rel. v. Thompson, 49 Mo. 188.] It is also fundamental that, under the law of principal and agent, authority to an agent to execute an instrument required by law to be under seal, must be shown and conferred by an instrument executed with the same formality, that is, it must also be under seal, at least where the agent acts outside of the presence of the principal. [Schnetze v. Bailey, 40 Mo. 69; St. Louis Dairy Co. v. Sauer, 16 Mo. App. 1; 31 Cyc. 1231.] It is, without doubt, also essential, in the law of principal and agent, that if the agent's authority is required to be in writing under seal, then ratification cannot be established by anything less than a writing under seal, provided, of course, there is no element of equitable estoppel involved. [Hawkins v. McGroaraty, 10 Mo. 546; Borel v. Collins, 30 Cal. 408; Bordere v. Den, 106 Cal. 594; Riggan v. Crain, 86 Ky. 249; Judd v. Arnold, 31 Minn. 430; Overman v. Atkinson, 102 Ga. 750; Ingraham v. Edwards,

64 Ill. 526.] So that the question of defendant's liability in this case would seem to depend upon whether or not the abolishment, by our statutes, of the common-law distinctions between sealed and unsealed instruments, extends to corporate judicial bonds, and whether or not our law still requires such bonds of a corporation to be under seal. The bond in question was executed under private seals affixed by the Manager-agent Reymond which would doubtless be sufficient, so far as the instrument *itself* is concerned, *if* the agent had authority under seal to execute it; because, in that event, since he was not the keeper of the corporate seal, he would perhaps be entitled to use the seal he had, namely, his private seal. On the other hand, if the bond is not required to be under seal, the mere fact that private seals were affixed does not compel it to be treated as an "instrument under seal" since section 2773, Revised Statutes 1909, says: "the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof." Hence, the question whether defendant's ratification of the bond in controversy can be shown by anything less than a writing under seal, is not affected by the fact that private seals were affixed to it at its execution. And this question depends upon whether or not the old common-law distinctions between sealed and unsealed instruments must be retained in dealing with corporate judicial bonds, that is, whether or not such an instrument, in order to be a *bond,* must come within the common-law definition thereof?

In Angell and Ames on Private Corporations (11 Ed.), sec. 219, it is said that although, under the old common-law rule, corporations could not contract, or appoint agents to do so for them, except by deed, yet, in modern times, the rule had been greatly though gradually relaxed; and that "in our own country, where private corporations of this kind, for every

laudable object, have been multiplied beyond any former example, on account of the inconvenience and injustice which must, in practice, result from its techincal strictness, the rule has, as a general proposi-. tion, been completely done away. The course of modern decisions seems to place corporations, with regard to their mode of appointing agents and making contracts in general, upon the same footing with natural persons.'' The author then goes on to say that while corporations may yet appoint their agents or make their contracts with the same formalities demanded by the common law, they are no more compelled to do so than are individuals. And that, like individuals, they are subject to the rules of law and, therefore, their contracts as to matters which the Statute of Frauds requires to be in writing, must be in writing, but as the Statute of Frauds does not require contracts within its purview to be under seal, the contracts of corporations, *even for the sale of lands,* do not have to be under seal.

The above section of Angell & Ames is referred to, quoted from and applied, in Campbell v. Pope, 96 Mo. 468, l. c. 472. In that case the validity of an appeal bond of a corporation, the Pope Iron and Metal Company, was in question, the defendants denying that it was properly executed. The bond in that case was executed in exactly the same way as the one at bar, except that it was done by the president of the corporation while the one before us was by a branch Manager. This, however, makes no material difference. There was no action of the board of directors, and the court upheld the validity of the bond on the ground that the execution thereof was subsequently ratified. The corporation in that case *had a seal* but it was not used. Notwithstanding this fact, and notwithstanding there was no previous authorization of the bond, the court held that the corporation having been brought into court ''is held to know what transpires in the suit'' and

to have knowledge of the fact that an appeal had been taken and an appeal bond had been given and that this bond had been executed for it without the seal, and the court on page 474 says that in view of these facts and the further fact that during the pendency of said appeal in the Supreme Court for two or more years the corporation was represented by counsel, "we must hold that this knowledge and acquiescence in the act of its president, in executing the bond in question without attaching the corporate seal and in the manner it was executed and sealed, *amounts to a ratification and adoption of the act,* and gives to it, by such ratification, as much validity as if the corporation through its directors, by resolutions or vote, had authorized it to be executed in that way." (Italics ours). This decision was rendered in October, 1888, *before* the passage of the Act of February 21, 1893 (Laws 1893, page 117), which is now section 2773, Revised Statutes 1909, which reads as follows: "The use of private seals in written contracts, conveyances of real estate, and all other instruments of writing heretofore required by law to be sealed (except the seals of corporations), is hereby abolished, but the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof."

After the passage of that Act, the Supreme Court, in Pullis v. Pullis Bros. Iron Co., 157 Mo. 565, upheld the validity of the deed of a corporation *conveying real estate* notwithstanding the fact that the deed did not have the corporate seal affixed thereto. It is true the corporation in that case had no seal, and the court held that since it had none and was not compelled by law to have one, it could convey real estate without the use of a seal, but that certain statutes required a seal, and, the statute relating to the form of corporate acknowledgments obviated its use only in case it had no

191M.A.15

seal. But this does not mean that, if a corporation has a seal, a judicial *bond* cannot be created without the use of its seal. The court was dealing with *conveyances* in that case and held that, if a corporation had a seal, it must use it on corporate conveyances because section 2399, Revised Statutes 1889 (now Sec. 2790, R. S. Mo. 1909), and section 2514, Revised Statutes 1889 (now Sec. 3001, R. S. Mo. 1909), authorized corporations to convey real estate by deed ''sealed with the common seal of such corporation'' and the Act of 1883 (Laws 1883, p. 20, and which now forms a part of section 2799 Revised Statutes 1909), allowed the certificate of acknowledgement to a corporate conveyance to state that the ''corporation has no corporate seal'' only in case it, in fact, had none. So that, with regard to corporate *conveyances,* we have statutes which require the use of the corporate seal *if one exists,* but not unless it does. In the case of corporate judicial *bonds,* however, there is no statute requiring them to bear the corporate seal as in case of conveyances, and hence there is not the same necessity for the use of the corporate seal, if the corporation has one, as there is in the case of a *conveyance.* But defendant, in the case at bar, says the very term ''bond,'' under the common law, means that it is an obligation in writing under seal. Undoubtedly true, but does the term ''bond'' now import that meaning since the distinction between sealed and unsealed instruments has been done away with? If this meaning of the term ''bond'' must still be preserved as to corporate judicial bonds, then how could the appeal bond in the Campbell v. Pope case be upheld? Under the old common law the term ''deed'' implied ''a writing *sealed* and delivered.'' [2 Blackstone's Comm., 295; Rondot v. Rogers, 99 Fed. 202; McCabe v. Hunter's Heirs, 7 Mo. 355.] The seal was what distinguished it from a simple contract. [Strain v. Fitzgerald, 128 N. C. 396.] Hence, if a seal is required on all corporate bonds merely because a

seal is implied in the word "bond" under the old common law, it would seem that a seal would be more strongly required in the case of *all* corporate deeds since, in addition to the common-law implication in the word deed, the two sections of the statute above quoted (Secs. 2790 and 3001) provide for corporate deeds to be "sealed with the common seal of such corporation." But the Supreme Court in the Pullis case, supra, at page 586, says that the necessity for a corporate seal existing by virtue of sections 2399 and 2514, Revised Statutes 1889 (now Secs. 2790 and 3001, R. S. Mo. 1909, and which *relate only to conveyances*) was wiped out by the Act of 1883 in all cases where the corporation had no seal, and that too although the statute abolishing private seals did not refer specifically to said sections requiring a seal to conveyances, and did say "except the seals of corporations." Clearly, the implication is that if there were no *statutes* requiring the use of the seal on corporate deeds, no force would be given to the necessity for a seal arising out of the implication contained in the common-law meaning of the term "deed." And surely, if a seal were required on a bond merely because the common law implies a seal in the use of the term "bond," then the court could not, in the Campbell v. Pope case, supra, overlook the omission of the seal and give effect to a ratification of the instrument as a bond when that ratification was not evidenced by anything under seal, and especially when there was then no statute abolishing private seals. The whole truth of the matter is that the distinction between sealed and unsealed instruments has been done away with to such an extent that a judicial bond is no different from any other simple contract except, of course, that where it is a statutory bond, it must be given in compliance with, and under the circumstances specified in, the statute authorizing it. But, so far as the form of its execution is concerned and the power of the corporation to there-

after ratify its unauthorized execution, there is no difference between a bond and any other simple contract. Hence, we are of the opinion that defendant cannot escape liability on the ground that the bond in question lacked the corporate seal or was not ratified under seal.

Of course, ratification can only be made with knowledge of the facts, and defendant claims that while it knew that a suit was filed on the note yet there is nothing to show that it knew an attachment had issued or a bond in support thereof had been made. We think, however, there was ample evidence from which the jury could find that the defendant did know of it. The facts hereinbefore stated show that the note grew out of the branch business of the defendant; that Reymond was general manager thereof and it was therefore his duty to collect the debts due that business; that jurisdiction in the suit arose only by attachment and not through summons and that the suit could be instituted only by attachment. However, defendant says this merely shows knowledge on the part of Reymond and the defendant's local attorneys, and they had only the authority Reymond could give them. But the evidence also shows that after the case was decided in the lower court, defendant itself was consulted as to an appeal, and it referred the matter to its general counsel at its home office. That general counsel went over the record in the case (which *showed on its face* that the suit was by attachment), and then authorized an appeal. This general counsel assisted the local counsel in the preparation of the briefs in the Supreme Court and helped argue and submit the case and the litigation covered a period of something like seven years. After the Supreme Court had affirmed the judgment, plaintiff in the case at bar wrote defendant herein concerning its liability on the bond. Defendant also referred this matter to its general counsel and he wrote plaintiff not to annoy the estate of Reymond about the bond on

which he was surety since his signature thereon as surety was "little more than a matter of form, for this company is very much stronger financially than the surety." Thus it appears that, if Reymond instituted the attachment suit and executed the attachment bond without authority, nevertheless the defendant itself, by pressing the litigation on which it was based, ratified the execution of the bond with as much certainty and force as did the corporation in the Campbell v. Pope case, and that it appears that defendant knew there was an attachment bond in the case. Certainly there is ample evidence from which the jury could find that defendant knew it and no ground whatever for an appellate court to say it did not. The note grew out of the business of which Reymond was general manager. The debtor, Mullett, was a nonresident, and the only way suit could be brought to collect the debt was by attachment of property belonging to Mullett. When judgment in the attachment suit was rendered against defendant, the latter itself was notified and its permission sought to authorize an appeal. It turned the matter over to its general counsel with authority to act and that counsel, after due consideration, finally authorized an appeal, and thereafter, with the attachment feature in the record before him, participated in pushing the matter in the Supreme Court. The attachment suit was instituted in 1905, prior to the passage of the Act of 1907 (Laws 1907, p. 69) authorizing attachment suits to be brought against a nonresident without a bond. Hence defendant had no reason to suppose an attachment bond was not given, since an attachment suit at that time could not be brought without a bond. And when defendant appealed the attachment suit, that appeal "preserved the attachment in full force until the final determination of such appeal." [Sec. 2335, R. S. Mo. 1909.]

Some objection is made to the instruction given in plaintiff's behalf, but it is without merit.

The judgment is affirmed. All concur.