[CHAMBERSBURG, OCTOBER 20, 1828.]

## FLEMING against BEAVER.

### IN ERROR.

H. and M. were sureties for P., and M. paid half the debt, and joined H. in confessing a judgment to a creditor of P's. for the other half, it being agreed H. should pay this judgment. M. however, was compelled to pay it: *Held,* that H's. land being sold, by execution, M. had a right to come on the fund in the sheriff's hands, in preference to a subsequent judgment creditor of H.

Actual payment discharges a judgment at law; but in equity, it may still subsist if the justice of the case requires it.

An equitable right to such judgment may exist without any actual assignment of it.

In the Court of Common Pleas of *Franklin* county, to which this writ of error was directed, the following case was stated, for the opinion of the court. The plaintiff in error was defendant below:—

In the year 1818, *James Walker* held two judgments, amounting to about six hundred dollars; one entered to *November* Term, 1817, No. 113, and the other to the same term, No. 114, against a certain *George Pennell,* who was the owner of a certain house and lot in *Greencastle.* *Pennell* sold and conveyed the house and lot to *Henry Guiger,* for a sum more than sufficient to discharge the encumbrances, payable in three or four annual instalments; but *Guiger* being apprehensive that the encumbrancers

(Fleming *v.* Beaver.)

might press their liens against the house and lot, before sufficient of the purchase money owing to *Pennell* by *Guiger*, would become due, required that he should be indemnified against such an event. It was likewise part of the agreement between *Pennell* and *Guiger*, that the purchase money should be applied, as it became due, to the discharge of the liens of which the parties mentioned were aware; and at the same time, *Pennell* entered into a bond with *Isaac Hartman*, deceased, (of whom *Thomas M'Cauley* subsequently became administrator,) and *Peter Hawbucker*, as his sureties to *Henry Guiger*, conditioned to indemnify *Guiger* against encumbrances. After some time, *Walker* being about to proceed against the property on his judgments, *Thomas M'Cauley*, as representative of *Isaac Hartman*, who was then dead, paid him the sum of three hundred and seventy-six dollars and eighteen cents, and discharged the balance due to *Walker* in the following manner: *Walker* was indebted to a certain *Henry Finfrock* in a certain judgment to *January* Term, 1818, No. 140, and which had been subsequently revived by *Scire Facias*, amounting to two hundred and forty-two dollars and seventy-two cents. For this sum *Thomas M'Cauley*, *Peter Hawbucker*, and *James Walker*, confessed judgment to *Henry Finfrock* at *November* Term, 1820, No. 182, which it was agreed, amongst the defendants thereto, was to be paid by *Hawbucker*. This judgment was entered on the 4th of *December*, 1820, and revived by *Scire Facias* to *April* Term, 1823, upon which judgment was entered, and a *Fieri Facias* issued thereon to *November* Term, 1823, upon which the goods of *Thomas M'Cauley* were levied. This judgment was to be recovered for the use of the *M'Kean's* administrators. On the 29th of *December*, 1823, *Thomas M'Cauley* paid to *A. J. Findlay*, their attorney, the balance due on the execution, to the amount of two hundred and seventy-nine dollars and eighty-nine cents, and the execution was endorsed, "plaintiff satisfied, *A. J. Findlay*, attorney of the plaintiff."

The following entry was also made on the execution docket:—

"Received the 29th of *December*, 1823, of *Thomas M'Cauley*, satisfaction in full of debt, interest, and attorney's fee; and by order of *Peter Hawbucker* filed, this judgment and execution are to stand against him, the said *Hawbucker*, for the use of the said *M'Cauley*. "*A. J. Findlay*, attorney of the plaintiff."

The bonds given by *Guiger* to *Pennell* as the consideration of the purchase of the house and lot, were shortly after transferred by *Pennell* to other persons.

On a *Venditioni Exponas*, No. 73, *April* Term, 1824, at the suit of *William Drucks*, a house and lot of *Peter Hawbucker* were sold to *John Beaver*, on the ——————, for the sum of five hundred and five dollars, which was paid over to the defendant, *Archi-*

(Fleming *v.* Beaver.)

*bald Fleming*, the then sheriff, to abide the question, whether the said judgment of *Henry Finfrock* was entitled to be paid out of the proceeds of the said sheriff's sale. *John Beaver* was the surviving partner of *George Palsgrove*, and claimed the money under the judgment stated below.

The following are the judgments against *Peter Hawbucker:*—

*Henry Finfrock*       Entered the 4th of *December*, 1820.
v.                  Judgment for    -    -    -   $279 83
*Thomas M'Cauley*,   Interest from the 12th of *June*,
*Peter Hawbucker*, and     1823,    -    -    -    -
*James Walker.*        Costs,    -    -    -    -    13 56½

*Waynesburg, Greencastle,*   Entered the 22d of *April*, 1821.
and *Mercersburg Turnpike*   Judgment, No. 313, *Jan.*
v.                      1811,    -    -    -    -   $118 81
*Peter Hawbucker.*       Interest till 17th *Jan.*1821.    04
                                                           _____
                                                           118 85
                        Then paid,    -    -    -    18 25
                                                           _____
                                                           100 65
                        Interest till sale,    -    -    19 66
                        Costs,    -    -    -    -    50
                        Commission,   -.    -    -    2 40
                                                           _____
                                                           123 16

*Drucks*         *Venditioni Exponas*, No.73, *April* Term,1824.
v.              Costs of sale,    -    -    -    -   $12 02
*Hawbucker* and                                        123 16
*M'Lanahan.*
                505 00                                 135 18
                135 18

                369 72
                6 69½
                _____
                363 12½

*John Beaver* and        Entered on the 18th of *April*, 1821.
*George Palsgrove*    Judgment, No. 226, *April* Term,
v.                  for    -    -    -    -    -   $380 00
*Peter Hawbucker.*   Interest from the 17th of *April*,
                    1821,    -    -    -    -    -
                    Costs,    -    -    -    -    -    50
                    Commission,   -    -    -    -    6 69½

(Fleming *v.* Beaver.)

. If the court, on the above statement of facts, should be of opinion, that *Thomas M'Cauley* is entitled to be paid the amount of the judgment in favour of *Henry Finfrock*, and to stand in his place, judgment is to be entered for the defendant; and, if they should be of opinion that he is not, then judgment to be entered for the plaintiff, for three hundred and sixty-three dollars and nineteen and a half cents.

The court below gave judgment for the plaintiff.

*Dunlop*, for the plaintiff in error.

*Findlay*, *contra*.

The opinion of the court (Tod, J. dissenting, and Huston, J. and Smith, J. being absent at the argument, and taking no part in the cause,) was delivered by

Gibson, C. J.—The substance of this obscurely stated case is this: *Pennell* sold a house and lot to *Guiger*, and together with *Hawbucker* and *Hartman*, (since dead, and represented by *M'Cauley*,) executed a bond, with condition, that the encumbrances should not be pressed faster than the purchase money should grow due, to discharge them. *Walker*, a judgment creditor, being about to proceed, *M'Cauley* paid him in cash rather more than half the amount of the bond of indemnity to *Guiger*, and the residue thus:—*Finfrock* had a judgment against *Walker;* in satisfaction of which, *Hawbucker*, *M'Cauley*, and *Walker*, confessed a judgment to *Finfrock*, which, it was agreed by the parties, *should be paid by Hawbucker*, but which was levied on the goods of *M'Cauley*, and paid by him. *Hawbucker's* house and lot being sold on a judgment at the suit of *Drucks*, the question is, whether *M'Cauley* shall come on the fund in the hands of the sheriff, as a judgment creditor under *Finfrock;* or, whether it shall be paid to *Beaver*, a subsequent judgment creditor.

It is clear, that *Hawbucker* and *M'Cauley* stand in the relation of principal and surety; and a surety who has paid the debt, is entitled to be substituted for the creditor. But a subsequent creditor, whose fund has been taken away by a prior creditor, is also entitled to be substituted. Hence, an argument, that in the case at bar, there is but equity against equity, and that the parties are to be left to their legal advantages. The parties are the principal, the surety, and the subsequent encumbrancers. But the judgment creditor had not a second fund in the hands of the surety; and even if he had, it is not easy to imagine on what principle of justice the surety would be bound to pay the debt in ease of the principal, and for the benefit of a subsequent encumbrancer. Surety was not demanded for the benefit of any but those who were parties to the contract; and, the advantages incident to it, necessarily belong only to themselves. The right of the surety to be substituted in the first place, is indisputable; and the question stands exactly as if the prior creditor himself were pressing his claim on this fund, without having pursued

(Fleming *v.* Beaver.)

the surety to insolvency. That would not be required of him. The surety contracted on the credit of this very fund; and being prior in time, he is prior in right to a creditor who has acquired a claim on it subsequently. If such creditor could compel the surety to pay the prior debt, the effect would be precisely the same as if the principal had paid it, and the surety were compelled to pay the subsequent creditor; for as both debts would be satisfied, it could be of no consequence to the surety, whether his money were applied to the one debt or the other: and thus, it is obvious, his responsibility might be kept alive after the extinction of the debt for which alone it was pledged. That cannot be done.

Actual payment discharges a judgment at law, but not in equity, if justice require the parties in interest to be restrained from alleging it, or insisting on their legal rights. *Kuhn* v. *North*, 10 *Serg. & Rawle*, 399, was the case of a voluntary payment of the debt of another, which, so far from creating an interest in the judgment to affect subsequent creditors, would not have sustained an action of *indebitatus assumpsit* against the debtor. There is an obvious difference between one who has voluntarily paid the debt of another, and one who has paid on compulsion, from having become surety at the instance of the debtor, which gives an equity, not only against the latter, but against every one else deriving title from him subsequently to the contract of suretyship.

As to the supposed inefficacy of the substitution attempted by the parties, and the alleged inability of this court to compel the creditor to assign the judgment, it is sufficient to remark, that an actual assignment is unnecessary. The right of substitution is every thing, and actual substitution nothing. By a fiction, to which we are indebted for nearly all our equitable jurisdiction, the law has made the assignment already; and hence, the right of the party entitled, by no means depends on the willingness of the creditor to transfer the security. Here there is a clear right of substitution; and the surety having paid the debt, succeeds by operation of law to the rights of the creditor.

Judgment reversed, and judgment for the defendant.