GERMAN AMERICAN SAVINGS BANK vs. FRITZ, Appellant, impleaded with BLANKENBURG, Respondent, and another.

*February 8 — March 1, 1887.*

*Suretyship: Payment of judgment: Subrogation: Method of enforcing contribution.*

1. One surety who has paid a judgment rendered against the principal debtor and all the sureties, may, for the purpose of enforcing repayment from the principal or contribution from his co-sureties, be subrogated to all the rights of the judgment creditor, especially if he has taken an assignment of the judgment.
2. To secure the benefit of the lien of such judgment as against a co-surety, the surety paying should ordinarily resort to an equitable proceeding; but when such co-surety has made a motion, based on such payment, that the judgment be canceled and declared satisfied as to all the defendants, the court may order the judgment to stand as against him to the extent of his liability to contribute, and may award execution thereon against him for that amount.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that the defendant Servatius made his two promissory notes, each payable to the order of the defendants *Fritz* and *Blankenburg*, both of whom indorsed each of said notes for the accommodation of said Servatius, one bearing date January 19, 1877, for $1,000

and interest, and the other bearing date April 25, 1877, for $1,025.83 and interest, and each of which was, at the time of the making thereof, discounted by Servatius for his own benefit at said bank, and each of which thereupon became the property of the bank. February 14, 1878, the plaintiff bank recovered and docketed a judgment against all three of said defendants upon said notes for $2,035.04, damages and costs. August 24, 1882, *Blankenburg* paid to the bank the whole amount of said judgment, and on the same day the judgment was satisfied of record as to him. August 28, 1882, the plaintiff assigned the judgment to *Blankenburg* by an assignment in writing which was thereupon filed with the clerk of the court and a minute thereof made in the docket of the judgment.

August 15, 1885, upon motion of *Fritz* for an order canceling the judgment against all said defendants on the ground that the same had been purchased by, and assigned to, said *Blankenburg* and thereby paid, based upon his affidavit and the affidavit of *Blankenburg* and the president of the bank and the record and judgment roll, the court found as facts, in addition to what is above stated, that *Fritz* and *Blankenburg* were co-sureties for Servatius on said notes; that *Blankenburg* so paid the amount of the judgment to the bank out of his own means, and took an assignment of said judgment to himself, and still held the same; and that *Blankenburg* had received no part of the money so paid from Servatius on or out of securities given by him for the debts, and held no security for the same. Upon the facts so found it was ordered, in effect, that *Blankenburg* release said *Fritz* from one half of said judgment and of the interest accrued thereon, by due entry on the docket in the manner requisite to the satisfaction of judgments, or by written release executed and filed in the court, and for costs; that the remaining half of said judgment stand as against *Fritz* unaffected thereby; that the whole judgment stand as

against *Servatius* unaffected thereby, and that *Blankenburg* have all the same rights and remedies thereon, as against him, as he had before the making of such order.

October 31, 1885, *Fritz* gave notice of motion to be made November 10, 1885, based upon his affidavit and an affidavit of Charles E. Shepard, and upon all the files and records therein, for an order setting aside said order of August 15, 1885. Upon the hearing of that motion, affidavits of *Blankenburg* and *Servatius* were read in opposition thereto, and thereupon, on November 17, 1885, it was ordered by the court, in effect, that said motion be, and the same was thereby, denied, with costs. January 16, 1886, and in compliance with the order of August 15, 1885, *Blankenburg* satisfied said judgment as against *Fritz* to the extent of one half thereof.

Upon an affidavit of *Blankenburg* showing the facts, and that *Fritz* had paid no part of the judgment, and that Servatius was insolvent, and that no execution had ever been issued thereon, and that the judgment remained unsatisfied and due as against *Fritz* to the extent of one half thereof and interest, and on May, 15, 1886, it was ordered by the court, in effect, that leave be, and the same was thereby, granted for execution to issue on the judgment against the property of said *Fritz* and in favor of said *Blankenburg*, for $1,017.52, with interest thereon from February 14, 1878; and in pursuance thereof execution, reciting the facts stated and orders made, was issued thereon for said last-named amount May 17, 1886, and the same was returned wholly unsatisfied July 27, 1886. July 29, 1886, upon verified petition stating the facts and upon the judgment and proceedings had, it was ordered by the court, in effect, that leave be, and the same was thereby, granted for an *alias* execution to issue on said judgment against the property of *Fritz* for the same amount as the other, in favor of *Blankenburg*, and the same was thereupon issued and levied upon

real estate. August 20, 1886, *Fritz*, on an affidavit of his attorney stating the issuance of said *alias* execution and said levy, and upon the judgment roll and all the papers on file and the record in the action, gave notice of motion to be made August 30, 1886, to set aside, vacate, and annul said *alias* execution and all subsequent proceedings thereon, and to satisfy said judgment of record as to *Fritz*, etc. Upon the hearing of that motion, an affidavit of *Blankenburg* was read as to the location and occupancy of said real estate, and thereupon, and on September 8, 1886, as of August 30, 1886, it was ordered by the court, in effect, that said motion be, and the same was thereby, denied, with $10 costs to be paid by *Fritz* to said *Blankenburg.* From said last-mentioned order *Fritz* appeals.

*A. M. Blair*, for the appellant, contended, *inter alia*, that the payment of a joint judgment against two or more by one of the judgment debtors extinguishes the judgment for all purposes, and an assignment thereof is void. *Harbeck v. Vanderbilt*, 20 N. Y. 395; *Bank of Salina v. Abbot*, 3 Denio, 181; *Ontario Bank v. Walker*, 1 Hill, 652; *Booth v. F. & M. Nat. Bank*, 74 N. Y. 228; *Townsend v. Whitney*, 75 id. 425; *Hammatt v. Wyman*, 9 Mass. 138; 17 id. 154; *Morley v. Stevens*, 47 How. Pr. 228; *Russell v. Hugunin*, 2 Ill. 562; *Tompkins v. Fifth Nat. Bank*, 53 id. 57. As between themselves, *Fritz* and *Blankenburg* were joint contractors and joint judgment debtors.

*N. C. Giffin*, for the respondent, cited *Goodyear v. Watson*, 14 Barb. 481; *Cuyler v. Ensworth*, 6 Paige, 32; *Eddy v. Traver*, id. 521; *Mathews v. Aikin*, 1 N. Y. 595; *Norton v. Coons*, 3 Denio, 130; *Starr v. Ellis*, 6 Johns. Ch. 393; *Barnes v. Camack*, 1 Barb. 392; *Cole v. Malcolm*, 66 N. Y. 366; *Twombly v. Cassidy*, 82 id. 158; *Springer's Adm'rs v. Springer*, 43 Pa. St. 518; *La Farge v. Herter*, 11 Barb. 164; *Morris v. Evans*, 2 B. Mon. 84; 5 Wait's Act. and Def. 217; *Douglas v. Waddle*, 1 Ohio, 413; *Smith v. Rumsey*, 33 Mich. 183;

*Kelly v. Page,* 7 Gray, 213; *Mason v. Pierron,* 63 Wis. 239; *Townsend v. Whitney,* 75 N. Y. 429–30.

CASSODAY, J.   We have carefully examined the numerous cases cited by the respective counsel, and many others. The contrariety in the opinions of different courts may, to some extent, be reconciled by a strict regard to the particular facts inducing each particular expression of opinion, and whether such utterance had reference to the respective *rights* of the parties or only to the proper *remedy* for the determination and enforcement of such rights.   These distinctions may be fairly illustrated by the case at bar.   Servatius was the maker of both notes, and primarily liable thereon.   *Fritz* and *Blankenburg* were co-payees and co-accommodation indorsers.   Servatius negotiated the notes, and had the avails thereof.   Upon the making, indorsement, and negotiation of the notes at the bank, the three defendants became jointly and severally bound by their *express contract* to pay to the bank the amount of the principal and interest mentioned in the notes, or any judgment which might be recovered thereon.   Though not fully expressed in words, yet in making the contract the relations of the defendants to each other were such that there arose therefrom, as between themselves, by implication of law, two conditional contracts or obligations,— one to the effect that if said co-indorsers or either of them paid said indebtedness or any judgment thereon or any part thereof, then Servatius would repay to him or them the amount so paid, with interest; the other, to the effect that, if either of such co-indorsers paid thereon more than the other, then such other would reimburse him to the extent of one half of such excess, and interest thereon.   But such implied contracts or obligations were, necessarily, to remain conditional until such payment or payments should be made — then to become absolutely binding.   Such were the legal

rights and liabilities of the defendants as between themselves.

Upon the rendition and docketing of the judgment the same became a lien upon the real estate of *Fritz* in question, but probably without the knowledge of the bank or *Blankenburg.* Servatius was insolvent. *Blankenburg* was compelled to pay to the bank the whole amount of the judgment, which was then satisfied as to him, and he thereupon took from the bank an assignment in writing of the judgment, and then filed the same with the records of the case, and the fact was then noted in the docket of the judgment as stated. It is now claimed that such judgment thereby became fully paid and completely extinguished as to each and all of said defendants, and hence ceased to be any longer a lien upon said real estate. Of course, when the bank received from *Blankenburg* the full amount due on the judgment, its interest therein was thereby necessarily terminated and extinguished. By such payment the *expressed* provisions of said contracts, by which all the defendants became bound to the bank and upon which said judgment was based, became satisfied, so far as the bank was concerned. Numerous cases are cited by the learned counsel for the appellant, holding that at law such payment operated as a satisfaction and discharge of the judgment, notwithstanding such assignment. Others might be cited to the same effect. This rule is, to some extent, modified by the statute declaring, in effect, that the release of a joint debtor " shall operate as a satisfaction or discharge of such joint debt only to the amount of the proportion which the person so released ought in equity, as between himself and the other joint debtor or debtors, to pay: . . . provided . . . that, if the person released is only a surety, his release shall operate as a payment of such joint debt to the extent of the money actually paid by him to procure his release, and no further." Sec. 4204, R. S. But such pay-

ment by no means operated as a satisfaction or discharge of either of such implied contracts or obligations. On the contrary, it was the very condition which was to make, and did make, each of them absolutely binding. Besides, it did not operate to satisfy or discharge the express promise of Servatius to pay the amount of the notes to the other defendants as co-payees. Upon the payment by *Blankenburg*, that express promise became binding to him.

The only difficulty is in the method of enforcement. The question recurs, How are such absolute rights or obligations, thus secured to *Blankenburg* by virtue of such implied contract and payment, to be enforced against *Fritz* and the land in question? Did *Blankenburg* succeed to the judgment lien upon the land held by the bank, by virtue of the assignment, or by way of subrogation, or not at all? The difficulties in the way of enforcing the same at law by execution issued directly upon the original judgment have already been pointed out and are apparent. By paying the amount of the judgment and taking the assignment, *Blankenburg* did not and could not, *as against Fritz*, acquire the same right to the full amount of the judgment as had been possessed by the bank, although he may have acquired such right as against Servatius. Sec. 4205, R. S. The amount which *Blankenburg* had the right to recover, as against *Fritz*, could not be ascertained from the judgment itself. Such right was not determined by the judgment, for it only accrued and became absolute by the payment made more than four years after the rendition of the judgment. The facts which secured to *Blankenburg* such right as against *Fritz*, existed largely *dehors* the judgment. These things show the necessity of an authoritative determination of the respective rights and liabilities of such co-accommodation indorsers as between themselves, before any process should issue to enforce them. This could only be done, independent of statute, by a hearing of the respective parties in

court and an adjudication of their respective rights and liabilities therein.

It has been determined by this court that the right of a surety or such co-accommodation indorser to be subrogated to the remedies of the judgment creditor, is a matter cognizable by a court of equity. *Mason v. Pierron*, 63 Wis. 244. Mr. Justice Lyon there said: "The extent to which subrogation may be decreed has been a matter of some conflict between the courts of this country and of England. It was formerly held in England, following the Roman law, that a surety subrogated to the rights of a creditor had precisely the same rights the creditor had, and stood in his place; but in later times the rule has been restricted in that country, and it is there now held that the right of subrogation extends only to securities other than the obligation or instrument which is the evidence of the debt. . . . The courts of this country, however, have very generally adhered to the ancient rule, and hold that although the lien or obligation be extinguished at law by the payment of the debt, yet, for the benefit of the surety, it continues in equity in full force. This is believed to be the more just and reasonable rule." In support of this proposition numerous cases might be cited. See *Fleming v. Beaver*, 2 Rawle, 128, 19 Am. Dec. 629; *Edgerly v. Emerson*, 23 N. H. 555; *Brewer v. Franklin Mills*, 42 N. H. 292; *New Bedford Inst. v. Hathaway*, 134 Mass. 69, 45 Am. Rep. 289. In the New Hampshire cases cited, an attachment of the property of the principal debtor was kept alive for the benefit of the surety who paid the debt and took an assignment of the cause and right of action. As observed in *Mason v. Pierron, supra*, "the American rule is fully recognized in our statute, which prescribes the procedure by which one of several judgment debtors, who has paid more than his just share of the judgment, may keep the judgment alive and retain the lien thereof upon the land of the other judg-

ment debtors for the purpose of enforcing contribution by the latter." Secs. 3021–3024, R. S. These statutes assume the continuance of the lien *at law* for at least twenty days after payment, without anything being done, and then provide a way for preserving such a lien at law by simply filing an affidavit. But such remedy is accumulative, and does not take away the right which previously existed of enforcing the same as between the parties by apt proceedings in equity. *McDaniel v. Lee,* 37 Mo. 206. It was there said, in effect, that prior to the statute in that state a surety who had paid the debt had a remedy against his co-sureties either by bill in equity to enforce contribution against all, or he might proceed against each separately at law for his proportionate share of the excess paid; and since the statute he also had a summary remedy by motion for judgment for such proportionate share of the excess.

It being thus established that in equity a defendant surety, on payment of the original judgment, is subrogated to the rights of the judgment creditor, especially where, upon making such payment, an assignment of the judgment is taken to keep alive the security as here, it only becomes necessary to consider whether the proper remedy has been resorted to in the case at bar. Ordinarily, to secure the benefit of such judgment lien against such co-surety or co-accommodation indorser, the one paying the amount of the judgment should proceed by bill, suit, petition, or some proceeding in equity, wherein the equitable rights of the respective parties may be adjudicated and enforced. *Cuyler v. Ensworth,* 6 Paige, 32; *Speiglemyer v. Crawford,* 6 Paige, 254; *Goodyear v. Watson,* 14 Barb. 481; *Townsend v. Whitney,* 75 N. Y. 425; *Smith v. Rumsey,* 33 Mich. 183; *Neal v. Nash,* 23 Ohio St. 483; *Furnold v. Bank of State,* 44 Mo. 336; *Lidderdale's Ex'rs v. Robinson's Ex'rs,* 12 Wheat. 594. But such relief has been granted by order of the court upon hearing of the parties. *Springer's Adm'rs v. Springer,* 43

German American Savings Bank vs. Fritz, imp.

Pa. St. 518. Thus, in *McDaniel v. Lee*, 37 Mo. 206, the non-paying joint debtors sought relief upon petition in a court of equity, and it was held, in effect, that although the proceedings were irregular yet, as the court had thereby acquired jurisdiction over the subject matter, it would retain it and do full justice between the parties by enforcing contribution according to their equitable rights.    So here, August 15, 1885, *Fritz* invoked the equitable powers of the court to relieve him from the judgment by fully satisfying and discharging the same.    *Blankenburg* resisted the motion, and after a full investigation and hearing the court found the facts as stated, and ordered, in effect, the judgment released as to one half as against *Fritz*, but binding against him and in favor of *Blankenburg* for the payment of the other half by way of contribution.    Not satisfied with such order, which seems to have been in strict accordance with the equitable rights of the parties, *Fritz*, upon new affidavits, renewed, substantially, the same application, and, after full hearing upon the merits, that motion was denied, November 17, 1885, as stated.    No appeal was taken from either of those orders, and both, and the affidavits upon which they were respectively based, appear in the record. The original and *alias* executions, which were each subsequently issued upon leave granted by the court, recited the orders as stated.    The motion to set aside the *alias* execution and proceedings under it, was, in effect, to renew, open, and reconsider what was thus twice before solemnly determined, and, as we think, was properly denied. *Fritz*, having thus had a full hearing in a proceeding equitable in its nature and apparently just, must be regarded as concluded.

*By the Court.*— The order of the circuit court is affirmed.