HON. WILLIAM H. HUNT, ⎫
⎬ Associate Justices
HON. WILLIAM T. PIGOTT, ⎭

NORTHWESTERN NATIONAL BANK OF GREAT
FALLS, PLAINTIFF, v. GREAT FALLS OPERA
HOUSE COMPANY, C. M. WEBSTER, J.
BOOKWALTER, H. O. CHOWEN, F. P.
ATKINSON, IRA MYERS AND ER-
NEST CRUTCHER, DEFENDANTS.

ON APPEAL.

F. P. ATKINSON, APPELLANT, v. C. M. WEBSTER,

## O. CHOWEN, IRA MEYERS AND ERNEST CRUTCHER, RESPONDENTS.

[No. 1,089.]

[Submitted April 18, 1899.  Decided June 5, 1899.]

*Sureties—Contribution—Release of Cashier—Public Policy—Consideration—Evidence.*

1. The right of a surety, who has paid a judgment against his principal, and himself and other sureties, to enforce contribution from a co-surety, under the Code of Civil Procedure, Section 1242, which provides that a surety paying a judgment against his principal and himself and other sureties shall be entitled to the benefit of the judgment, to enforce contribution or repayment, if within 10 days after payment he shall file with the Clerk of the Court where the judgment was rendered notice of his payment, and claim for contribution, is not barred by the lapse of 8 years after the payment of a judgment, but exists so long as the judgment is alive; such a proceeding not being an ordinary action within the meaning of Section 559 of the Code of Civil Procedure.

2. Courts will not, as a matter of public policy, enforce a release of a liability of a cashier of a bank, obtained by him in consideration of a loan to the promisor of funds of the bank.

3. An agreement to release a cashier of a bank from a personal obligation, based upon an agreement by him to loan the promisor bank funds, is without consideration.

4. In a proceeding by sureties to enforce contribution from a co-surety on a judgment paid by them, it appeared that the money with which the judgment was paid was borrowed on the individuel note of the sureties seeking to enforce contribution; that at the maturity of said note it was paid with money borrowed on the note of the principal judgment debtor, a corporation, which was indorsed by the sureties, who were members of its board of trustees; that the corporation was insolvent, and had been from the time of the payment of the judgment; that its liabilities greatly exceeded its assets; that at the time of the indorsement of the note it was well known by the indorsers, as well as the nonpaying co-surety, who was also a member of its board of trustees,,that it would have to be paid by the indorsers; that it is still unpaid; and that the execution of said note was never authorized by the board of trustees, of which fact the co-surety had notice.  *Held*, that the sureties had not been reimbursed by the principal debtor for the amount paid by them in satisfaction of the judgment.

5. In an action to enforce contribution, under the Code of Civil Procedure, Section 1242, which provides that a surety paying a judgment upon which he is jointly liable with others as surety shall be entitled to the benefit of the judgment to enforce contribution or repayment, if within 10 days after payment he shall file with the clerk a notice of payment, and claim of contribution, evidence that the execution of the notes on which the judgment paid was entered was authorized by the corporation defendant is immaterial.

*Appeal from District Court, Cascade County; Dudley Du Bose, Judge.*

ACTION by the Northwestern National Bank of Great Falls against the Great Falls Opera House Company and others. A judgment in favor of plaintiff was paid by Ernest Crutcher

and others, who were sureties for the opera house company, and joint judgment debtors.    From an order directing execution to issue in favor of the paying sureties against F. P. Atkinson, the latter appealed.    Affirmed.

### STATEMENT OF THE CASE.

This is an appeal from an order made and entered in the district court of the Eighth Judicial District, in and for Cascade county, on January 30, 1897, directing execution to issue in favor of C. M. Webster, E. Crutcher, H. O. Chowen and I. Myers against their co-defendant and co-surety F. P. Atkinson.

On the 13th day of December, 1892, the plaintiff in this cause recovered judgment against the Great Falls Opera House Company, a corporation, as principal, and C. M. Webster, J. Bookwalker, H. O. Chowen, F. P. Atkinson, I. Myers and E. Crutcher, as sureties, for the sum of $1,701.50, with interest at the rate of 10 per cent. per annum from the date thereof until paid, together with plaintiff's costs and disbursements, amounting to $7.50.    On the 17th day of December thereafter, the defendants C. M. Webster, H. O. Chowen, I. Myers and E. Crutcher, claiming that they had paid off the judgment so rendered, with costs and accrued interest, amounting at that time to the sum of $1,739.50, filed with the clerk of said court a notice of the payment by them of said judgment, and that they claimed contribution from their co-defendant sureties, J. Bookwalker and F. P. Atkinson, and repayment to them by their co-defendant principal in the said debt so paid to the plaintiff, in pursuance of the provisions of Section 348, First Division of the Compiled Statutes of Montana 1887.    Thereafter, and on the 27th day of May, 1896, the said Webster, Chowen, Myers and Crutcher served notice upon their co-defendant F. P. Atkinson that they would on the 3d day of June, 1896, or as soon thereafter as they could be heard, move the court to order execution on the judgment in the said action to issue in their favor and against the said Atkinson for the sum of $341.80, with

interest from the 17th day of December, 1892; said sum being the proportion which he was liable to pay to them in consideration of their having paid the judgment. At the time when this notice was served upon F. P. Atkinson, there was also served upon him, and filed in said court, an affidavit on behalf of the moving parties setting forth the recovery of the judgment aforesaid; that the same was rendered upon a promissory note made by the Great Falls Opera House Com pany as principal, and the other defendants named therein as sureties; that all the defendants named therein, other than the Great Falls Opera House Company, were liable only as sureties; that they were jointly and severally liable to and bound by the said judgment, and were co-sureties among themselves; that subsequently, and on December 17, 1892, the said Webster, Chowen, Myers and Crutcher, being so liable with the other co-defendant sureties, jointly paid the full amount thereof as aforesaid; that they thereupon duly filed with the clerk of the aforesaid court in which the judgment was rendered notice of such payment, and claim to contribution from the defendants Atkinson and Bookwalter; that the defendants Great Falls Opera House Company and Bookwalter were wholly insolvent, and had no property at any time after the 13th day of December, 1892, and up to the time the motion was made, subject to attachment or execution; that said Bookwalter was a nonresident of the state of Montana; that neither Bookwalter nor the Great Falls Opera House Company nor the defendant F. P. Atkinson had paid the said judgment, or any part thereof, nor had either of them paid any part thereof to the moving parties to reimburse them for the payment they had made; that the moving defendants, Webster, Chowen, Myers and Crutcher, had paid more than their share of said judgment; and that the sum of $341.80, with interest thereon at the rate of 10 per cent. per annum from December 17, 1892, was justly due and wholly unpaid by the said Atkinson.

On June 10th thereafter F. P. Atkinson appeared in answer to said motion, and filed his affidavit admitting that he

was one of the defendants in the above entitled action, and a co-surety with the moving defendants. He then denied that the moving defendants, or either of them, did on the 17th day of December, 1892, or at any other time, jointly or otherwise, pay the amount of said judgment, or any part thereof. He denied that the said J. Bookwalter or the Great Falls Opera House Company did not have at any time since the 13th day of December, 1892, any property subject to execution. He alleged that for a long time after the alleged payment of said judgment by the moving defendants the said J. Bookwalter and the Great Falls Opera House Company were both solvent; that the said company had ample property out of which said judgment could readily have been made; and that the said J. Bookwalter had property, subject to execution and unincumbered, sufficient to more than pay his proportion of said judgment. He denied further that the moving defendants, or either of them, had paid more than their proportion of said judgment, or that a sum equal to one-fifth of the same, or any sum whatever, was justly or otherwise due from him to them, or either of them. As a special defense he further alleged that during all the times mentioned he was the cashier of the Cascade Bank of Great Falls, a corporation doing business in the city of Great Falls, and that as such cashier he was authorized to handle and loan its money; that the money with which the judgment referred to in the moving defendants' affidavit was paid on December 17, 1892, was obtained by a note given by the said Great Falls Opera House Company, and that after its maturity, and on or about the 14th day of February, 1893, the said moving defendants, who were sureties upon the said note, having conceived the plan and intention of securing to themselves the property, building and real estate of the Great Falls Opera House Company, in conjunction with others, and with a view of carrying out this plan and intention, and to discharge the indebtedness of the said company on the said note, as well as other indebtedness, borrowed from him, as cashier, or from his bank, on the note of the Opera House Company, indorsed by themselves, and

due in 90 days, $3,200, with which to pay off the balance of the note given by the said Opera House Company to pay off the said judgment, and that, in consideration of this affiant's consenting to make such loan upon said note, the said moving defendants then and there agreed with the affiant to release him from all liability upon the said judgment referred to in favor of the plaintiff in said cause, and never at any time thereafter to hold him accountable for any part of the same in any wise; and that affiant, in consideration of this promise and agreement on their part, loaned them the said sum of $3,200, taking therefor the promissory note of the Opera House Company to the bank, indorsed by the moving defendants, with others, and payable as aforesaid, with interest at 1 per cent. per month. As a further special defense, the defendant Atkinson alleged that the claim of the moving defendants for contribution set out in their affidavit was barred by the provisions of subsection 1 of Section 514 of the Code of Civil Procedure of the State of Montana.

Thereafter, on the 28th day of January, 1897, the moving defendants, after notice to defendant Atkinson, moved the said court to strike out of the affidavit of Atkinson all that part of his first special defense stated therein, setting forth the contract between him and the moving defendants under and by virtue of which he was released from his liability upon the judgment recovered by the plaintiff on the 13th day of December, 1892, and also the whole of the said second special defense in which he set up the plea of the statute of limitations. The grounds of the motion were that the matters alleged in the special defenses were frivolous and immaterial, that the alleged contract was void as against public policy, and that the statute of limitations had no application. The motion was sustained. Thereafter, on January 30, 1897, the court, after hearing of proof, directed execution to issue in favor of the moving defendants as prayed for. From this order the defendant F. P. Atkinson appeals.

*Clayberg, Corbett & Gunn, W. G. Downing,* and *W. M. Cockrill,* for Appellant.

*I. Parker Veazey*, for Respondents.

**MR. CHIEF JUSTICE BRANTLY,** after stating the case, delivered the opinion of the court.

Appellant complains that the court below committed error in the following particulars:

(1)   In striking out his plea of the statute of limitations.

(2)   In striking out his defense of release based upon his alleged contract with respondents.

(3)   In directing execution to issue notwithstanding the proof showed that respondents had been reimbursed for the money expended by them in the payment of the judgment.

(4)   In sustaining the objection of respondents to the introduction as evidence of the minutes of a meeting of the board of trustees of the Opera House Company held on October 5, 1891.

We notice these questions in the order in which they are presented.

1.   The contention is made by appellant that this proceeding is an action, within the meaning of the Code of Civil Procedure Section 559, and that the limitation of three years (*Id.* Sec. 514, subdivision 1) is available as a complete defense to respondents' claim.   It is true, as claimed by appellant, that the limitation begins to run against the right of a surety to demand reimbursement from his principal, or contribution from his co-surety, as soon as payment is made by him; for, until such payment is made, no cause of action has accrued in his favor.   (Wood on Limitations, Sec. 145; *Oppman* v. *Steinbrenner*, 17 Mont. 369, 42 Pac. 1015; *Chipman* v. *Morrill*, 20 Cal. 131; *Stone* v. *Hammell*, 83 Cal. 547, 23 Pac. 703; *Richter* v. *Henningsan*, 110 Cal. 530, 42 Pac. 1077.) It is also the rule that, in an ordinary action to enforce repayment or contribution, the right of action is not based upon the written instrument upon which the surety was liable to the payee.   It is based upon an implied assumpsit for money paid by the surety for the use and benefit of the principal or co-surety.   (See authorities cited.)   The law implies

the promise upon the part of the principal to indemnify the surety for money paid by the surety for him, and upon the part of the co-surety to bear his share of the burden. Therefore, if this were an ordinary action for contribution, the limitation of three years invoked by the appellant (Sec. 514, subdivision 1, Code of Civil Procedure), would apply, and the claim of respondents would be barred  This proceeding, however, is not an ordinary action  within the meaning of Section 559, *supra.*  Relief is here sought in a summary way by the respondents under the provisions of Section 348, First Division, Compiled Statutes 1887, brought forward into the Code of 1895 as Section 1242, Code of Civil Procedure. This section provides:  ''When  property liable to an execution against several persons is sold thereon, and more than a due proportion of the judgment is satisfied out of the proceeds of the sale of property of one of them, or one of them pays, without a sale, more than his proportion, he may compel contribution from the others; and when a judgment is against several and is upon an obligation of one of them as security for another, and the surety pays the amount, or any part thereof, either by sale of his property or before sale, he may compel repayment from the principal.  In such case the person so paying or contributing is entitled to the benefit of the judgment to enforce contribution or repayment, if, within ten days after his payment, he file with the clerk of the court where judgment was rendered, notice of his payment and. claim to contribution or repayment.  Upon the filing of such notice, the clerk must make an entry thereof in the margin of the docket.''  An examination of the provisions of this section leads at once to the conclusion that its purpose is to relieve the paying surety from the necessity of bringing an action to enforce reimbursement or contribution.  If a judgment has been rendered against the principal and the sureties, this brings the surety within the class of those who, after payment, may invoke the provisions of the statute for relief. The action has already been had.  The judgment fixing the liability of the parties has been entered.  The surety paying

for the principal or his co-surety is given "the benefit of the judgment to enforce contribution or repayment," if he gives the notice required in the statute. He is not required to bring suit upon the judgment. No new judgment is contemplated. Otherwise, "the benefit of the judgment" given the surety would be in a large measure nugatory. It is clearly the intention of the provision that the paying surety shall be substituted to all the rights of the plaintiff in the judgment, with the right and privilege of using it, just as the plaintiff could use it, to enforce by the process of execution thereon the payment of such claim as he has. The same provision was construed by the Supreme Court of Minnesota in 1887 in *Ankeny* v. *Moffett*, 37 Minn. 109, 33 N. W. 320. In this case the court say: "To this right no condition is attached, except that of filing notice of payment and claim to contribution with the clerk of the court within ten days. The benefit of a judgment includes the means of enforcing it by execution. We think that it was the intention of the legislature that the subrogation, in such a case, by operation of law, should be as extensive as that which would occur by express assignment, and that, by payment and filing the required notice, the party paying should be, *ipso facto*, subrogated to all the right of the judgment creditor. If a party attempts to enforce contribution when he is not entitled to it, or for a greater amount than is his due, of course he could be enjoined." The only thing necessary to put the process in motion, after complying with the statute, is for the paying surety to show, after notice to his co-surety (*Davis* v. *Heimbach*, 75 Cal. 261, 17 Pac. 199; *Clarke* v. *Austin*, 96 Cal. 283, 31 Pac. 293), that he belongs to the class of persons contemplated by the statute, and the amount of his claim. This being done, the judgment is as efficacious in his behalf against his co-surety as it was originally in favor of the plaintiff against himself. This right would therefore be destroyed only by the death of the judgment from lapse of time. (*Peters* v. *McWilliams*, 36 Ohio State 155.) The limitation invoked by appellant therefore does not apply, and the action of the trial court in striking out the plea was correct.

2.    We think the court below was also correct in striking
out the allegation of appellant setting up his contract of re-
lease.    In assuming the position he did, he sought to main-
tain the proposition that because, as a trusted officer of the
Cascade bank, he had the authority to loan its moneys, he
was therefore at liberty to make such agreements with, and
exact such promises from, the customers of the bank, as
would inure to his own personal profit: and that, too, with-
out reference to his fidelity or disloyalty to his employer.    It
is a well-settled principle, both in law and equity, that the
courts will not lend their aid to enforce contracts and prom-
ises, the tendency of which is to place one under wrong in-
fluences, or those which offer one a temptation to do what may
injuriously affect the rights of third persons.    Especially is
this true in case of those who occupy fiduciary relations
towards the business and property of third persons.    They
are not permitted to deal with the subject of their trust for
their personal advantage.    ''Loyalty to his trust is the first
duty which the agent owes to his principal.    Without it the
perfect relation cannot exist.    Reliance upon the agent's in-
tegrity, fidelity, and capacity is the moving consideration in
the creation of all agencies.    In some it is so much the inspir-
ing spirit that the law looks with jealous eyes upon the man-
ner of their execution, and condemns, not only as invalid as to
the principal, but as repugnant to the public policy, every-
thing which tends to destroy that reliance.''    (Mechem on
Agency, Sec. 454.)    It follows, therefore, that an agent will
not be permitted to put himself in a position where his inter-
ests will be antagonistic to those of his principal.    ''An
agreement which tends to lead persons charged with the per-
formance of trusts or duties for the benefit of others to vio-
late or betray them will not be enforced.''    (2 Beach on
Modern Law Contracts, Sec. 1513.)    In *Rice* v. *Wood*, 113
Mass. 133, the court, in speaking of a secret agreement by
which a broker was to get a commission from the purchaser
of real estate which he had been employed to sell on commis-
sion, said:    ''Contracts which are opposed to open, upright,

and fair dealing are opposed to public policy. A contract by which one is placed under a direct inducement to violate the confidence reposed in him by another is of this character." Cases might be multiplied which recognize and enforce this principle, but the following, which are more or less in point, are deemed sufficient: *Continental Trust Co.* v. *Toledo, St. L. & K. C. R. Co.*, 86 Fed. 929; *Lum* v. *McEwen*, 56 Minn. 278, 57 N. W. 662; *Bell* v. *McConnell*, 37 Ohio St. 396; *Bunker* v. *Miles*, 30 Me. 431; *Miller* v. *Davidson*, 3 Gilman 518, 44 Am. Dec. 715; *Tisdale* v. *Tisdale*, 2 Sneed 596, 64 Am. Dec. 775; *Byrd* v. *Hughes*, 84 Ill. 174; *Noel* v. *Drake*, 28 Kan. 265; *Atlee* v. *Fink*, 75 Mo. 100; and *Spinks* v. *Davis*, 32 Miss. 152. In *Atlee* v. *Fink, supra,* the court say: "One employed by another to transact business for him has no right to enter into a contract with a third person which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith towards his employer. The interests of the defendant's employers, and those of plaintiffs, as buyers and sellers, were antagonistic, and defendant could not serve two masters in a matter in which there was such a conflict in their interests." The contract under consideration comes clearly within the rule of these cases. Atkinson put himself by this agreement in a position where the temptation was to be less careful and scrupulous in taking security for the loan, and it is of no moment that in fact the security was good, and that the bank lost nothing by the transaction. So jealous is the law of such transactions, that, if the release had actually been executed, the bank could have made him account for the profit he gained; and, as this was not done, the law will not aid him in the enforcement of it.

But, apart from the question of the validity of the contract viewed from the standpoint of public policy, we do not think it rested upon any consideration. Atkinson did not lend his own money, If the loan was a good one, then his duty to his employer was to make it. If it was not a good one, it was his duty to refuse it, for he cannot be heard to say that he

made a bad loan in violation of his duty.   His act in making the loan was therefore the act of the bank, his principal, and the consideration moved from the borrowers to the bank. The bank extended its accommodation, and it was compensated by the payment to it by the borrowers of the interest charged for the accommodation.   He furnished no consideration whatever.

3.   Appellant contends that the proof shows that the respondents have been reimbursed for the moneys paid by them in satisfaction of the judgment.   Upon this point the proof is the following:   The judgment was rendered and entered on December 13, 1892, upon a promissory note signed by the Opera House Company as principal and the other defendants as sureties.   On December 17, 1892, the respondents borrowed from the plaintiff herein, upon their individual note, the sum of $4,200.   This sum was deposited to the credit of defendant Webster.   He thereupon drew out this amount in three checks—one to pay the judgment of plaintiff herein, one to pay off a judgment of the same kind in favor of the Merchants' National Bank and against the Opera House Company, the defendants interested in this controversy, and one Wegner, and one to the account of the Opera House Company.   The last was a small balance of $7.   The judgment in favor of the Merchants' National Bank amounted to $2,242.50. When the note of the respondents fell due, they borrowed from the Cascade Bank, of which defendant Atkinson was cashier, the sum of $3,200, to be used, with moneys borrowed from other sources, to pay off the $4,200 due to the plaintiff bank on their individual note.   This was done on February 14, 1893.   The note to the Cascade Bank was executed in the name of the Opera House Company by H. O. Chowen, as president, and C. M. Webster, as secretary.   It was indorsed by them and Myers and Crutcher.   Chowen and Webster were in fact trustees and the president and secretary of the corporation.   Myers and Crutcher were also trustees.   The moneys borrowed from other sources were obtained in the same way.   The sum of $5,000 had been borrowed by them

in January from the State Bank of Minneapolis, Minnesota. The note made to this bank was indorsed by the respondents and one Dickerman. It was also executed in the name of the corporation. After paying off out of this loan some charges for interest upon a mortgage upon the property of the corporation and for insurance, the respondents deposited the balance, about $3,000, together with the amount obtained from the Cascade Bank, in the Security Bank, to the credit of the corporation. This was done on February 14, 1893. Thereupon the amount of the note due the plaintiff bank was paid by a check of the Opera House Company drawn against this fund. This check was drawn by C. M. Webster, the secretary and treasurer. The note due the Minneapolis bank was afterwards taken up by defendant Myers. This was some time in May, 1893. Since that time the respondents have been paying to Myers individually their share of the interest upon this sum. When the note to the Cascade Bank was paid, the money for that purpose was obtained from the Stockmen's National Bank, at Fort Benton, Montana. The note given for this was signed by the Opera House Company, by its president and secretary, and was indorsed by the respondents, with A. W. Kingsbury, Theo. Gibson, and John Lepley. This was done on November 1, 1893. After that date this note was renewed from time to time, and was still due and unpaid at the date of the hearing herein. At the time these transactions took place, the property of the corporation, consisting of the building and the lots occupied by it, was mortgaged for $22,000. The corporation was also indebted, besides this sum, to the amount of $15,000 to $20,000. The mortgage was subsequently foreclosed, and the property sold to satisfy it. The property realized $17,000, leaving a deficiency judgment for the trustees of the corporation to pay. There were nine of these trustees, the appellant and the respondents being of the number. The various transactions with the Cascade, Stockmen's, and Minneapolis banks were had without any meeting of the board of trustees, and without consultation with them by the respondents, they

acting with Kingsbury, Lepley, and Gibson in case of the transaction with the Stockmen's and Cascade banks, and with Dickerman in the transaction with the Minneapolis bank. Kingsbury, Lepley, Gibson, and Dickerman were not trustees.

All the parties interested knew fully the conditions surrounding the corporation, and the purposes for which the moneys were being borrowed. All knew that the corporation was insolvent in 1892, that it remained so, and that, besides the mortgage indebtedness secured by the lien upon its property, it owed large amounts. All knew that the enterprise was an unfortunate one, and that ultimately the liability incurred, both upon the notes in the judgments and upon the loans afterwards secured, was personal. All were anxious to escape the perils of the wreck that had overtaken them, and to avoid further loss. The appellant understood this as well as the respondents. He was a member of the board of trustees, and, if the respondents are to be charged with responsibility for acting for the corporation, he should be held to share the responsibility with them, because he dealt with them with full knowledge of the conditions. He therefore does not stand in the attitude of a stranger to the enterprise, trying to recover from the defunct corporation or from its officers upon a liability based upon representations made by them. He knew that they were acting, not as a board, but as individuals, and that as to him and them the corporation was not bound.

It is the rule that those who act as officers of a corporation cannot deny their authority to so act, when the rights of third parties are in question. But the appellant stands in no attitude to invoke this principle. He incurred no liability upon the faith of anything respondents have done, nor was he in any way deceived or misled by them to his injury. The banks from which the loans were obtained could properly say, perhaps, that these officers and the corporation are estopped to deny liability; but he, from his relation to it and them, cannot make this claim. Under the facts surrounding these transactions, we think it would be inequitable and unjust to

permit the appellant to escape liability to bear his part of the common burden.    We do not think that the status of the debt incurred by the respondents to raise the money to pay the judgment on December 17, 1892, was in any way changed by their subsequent behavior with reference to it.    Nor do we think that their use of the corporation's name in executing the notes upon which they afterwards borrowed the money with which to pay it puts them in such a position, under the facts, that it can be fairly said that they have been reimbursed by their principal.

4.    The minutes of a meeting of the board of directors held on October 5, 1891, were offered in evidence by counsel for appellant for the purpose of showing that the notes upon which judgments were entered in this case, and also in the case of the Merchants' National Bank, (23 Mont., 57 Pac. 445), were authorized by the corporation.    Upon objection, these were excluded.    There was no error in this.    It was claimed by respondents that they were authorized.    Judgments had already been entered upon them.    The appellant was a surety upon them, and judgment had been entered against him.    The evidence was immaterial and wholly foreign to the investigation.    It could only serve to incumber the record.

Let the order appealed from be affirmed.

*Affirmed.*

MR. JUSTICE PIGOTT, having been of counsel, took no part in this decision.