MERCHANTS NATIONAL BANK OF GREAT FALLS, PLAINTIFF, *v.* GREAT FALLS OPERA HOUSE COMPANY, C. M. WEBSTER, CHAS. WEGNER, H. O. CHOWEN, F. P. ATKINSON, IRA MYERS AND ERNEST CRUTCHER, DEFENDANTS.

---

ON APPEAL

F. P. ATKINSON, APPELLANT, *v.* C. M. WEBSTER, H. O. CHOWEN, AND ERNEST CRUTCHER, RESPONDENTS.

[No. 1,088.]

[Submitted April 18, 1899.   Decided June 6, 1899.]

*Principal and Surety—Judgment—Contribution—Remedy—Evidence.*

1.  A surety who has paid a judgment against his principal and himself and others as sureties may take an assignment of the judgment to himself, and enforce contribution from his co-sureties; the remedy afforded by Code Civil Procedure, Section 1242, which provides that a surety paying such a judgment may have the benefit of it to enforce repayment and contribution, if within ten days after payment he files with the clerk a notice of payment and claim of repayment and contribution, not being exclusive.

2.  A judgment against a principal and sureties was paid by one of the sureties, who took an assignment of it to compel contribution from his co-sureties. Thereafter the judgment was, at the request of the paying surety, satisfied of record to relieve the real estate of the paying surety from the lien. It was intended to have it satisfied only as to the paying surety. *Held,* that as to a co-surety who paid no consideration for it, such satisfaction did not release his liability to contribute.

3.  In a proceeding to enforce contribution from a co-surety, by a surety who has paid and taken an assignment of a judgment against them, it is competent for the paying surety to testify that he did not intend to have the judgment satisfied as to his co-surety, where he had, after payment and assignment of the judgment, procured a formal satisfaction of it to release his real estate from the apparent lien thereof.

*Appeal from District Court, Cascade County;   Dudley Du Bose, Judge.*

ACTION by the Merchants' National Bank of Great Falls against the Great Falls Opera House Company and others. A judgment in favor of plaintiff was paid by Ernest Crutcher and others, who were sureties for the opera house company, and joint judgment debtors. From an order directing execution to issue in favor of the paying sureties against F. P. Atkinson, the latter appealed.   Affirmed.

*Messrs. Clayberg, Corbett & Gunn, Mr. W. G. Downing,* and *Mr. W. M. Cockrill,* for Appellant.

*Mr. I. Parker Veazey,* for Respondents.

**MR. CHIEF JUSTICE BRANTLY** delivered the opinion of the court.

This is an appeal from an order made and entered in the district court of the Eighth judicial district in

and for Cascade county on January 30, 1897, directing execution to issue in favor of C. M. Webster, H. O. Chowen, and Ernest Crutcher against their co-defendant and and co-surety, F. P. Atkinson.

On December 22, 1892, the plaintiff herein recovered judgment against the Great Falls Opera House Company, a corporation, as principal, and C. M. Webster, Charles Wegner, H. O. Chowen, F. P. Atkinson, Ira Myers, and Ernest Crutcher, as sureties, for the sum of $2,242.50, with interest at 10 per cent. per annum from the date thereof. The motion for execution herein against F. P. Atkinson was made upon the same day as the motion made in the case of *Northwestern National Bank* v. *Great Falls Opera House Co.*, et al., ante p. 2, 57 Pac. 440. It was heard at the same time, and upon substantially the same proof. The right to contribution from Atkinson in this case, however, is based upon a formal assignment of the judgment by the plaintiff to the moving defendants after payment of the same by them. This payment was made on December 23, 1892, and the facts with reference to it are set forth in full in the opinion in *Northwestern National Bank* v. *Great Falls Opera House Co.*, et al., *supra*. The affidavit of the moving defendants herein differs from the affidavit made in that case in that it predicates the claim of contribution upon the assignment of the judgment. It also appears from the affidavit that, though assigned to the respondents, the judgment was thereafter formally satisfied by the attorneys for plaintiff at the request of some one of the respondents, in order that it might not appear as a lien upon the real estate of the respondents, which they were selling from time to time. This formal satisfaction is alleged to have been made for this purpose only.

The defenses alleged in the counter affidavit of Atkinson in this case are the same as in the former case. The action of the court upon the defense based upon the alleged contract of Atkinson with Webster, Chowen, Crutcher, and Myers, and also upon the plea of the statute of limitations, was the same. The contract sought to be made available herein is the same

as the one alleged in that case, Atkinson claiming that the agreement of release in consideration of the loan of $3,200 by the Cascade Bank on February 14, 1893, applied to both judgments.

After the proof was heard, the court below ordered execution to issue against Atkinson for $448.50, or one-fifth of the judgment, with interest; it appearing that Ira Myers had contributed his share of the judgment, and that Wegner was insolvent.    From this order Atkinson appeals.

Besides the assignments of error made in the former case, which were therein considered and disposed of, and will not be here again examined, the appellant asks a reversal on two grounds:

(1)    That the court erred in granting the motion for the reason that no notice of payment and claim of contribution was filed as provided by Section 1242, Code of Civil Procedure; and

(2)    That the court erred in granting the motion for the reason that the judgment had been satisfied of record.

1.    The contention is here made that the respondents, having failed to give the notice required in order to avail themselves of the provisions of Section 1242, cannot have the relief sought under the assigned judgment; and this is equivalent to saying that, because the legislature has provided a summary mode by which a surety may enforce reimbursement or contribution under the judgment, the respondents may not, therefore, resort to the remedy invoked here.    We understand, however, that the remedy provided by this section is cumulative, and that all the rights and equities existing in favor of the sureties in this regard will be enforced by the courts in proper cases, notwithstanding the existence of the statute providing the summary mode.    The surety may proceed to obtain relief by any recognized mode.    (*McDaniel* v. *Lee*, 37 Mo. 206; *Peters* v. *McWilliams*, 36 Ohio St. 155; *German American Bank* v. *Fritz*, 68 Wis. 390; 32 N. W. 123.)    In the case of *Peters* v. *McWilliams*, *supra*, in commenting upon a similar statute, the court say:    "The effect of

this statute upon the case at bar is to give the plaintiff, who had an existing demand on defendant, a cumulative remedy.'' It clearly appears in this case that the respondents at the time of payment took an assignment of the judgment, intending to keep it alive in order to enforce contribution from their co-sureties. The question presented by this contention therefore is, may a surety who has paid a judgment against himself and his co-sureties take an assignment of it to himself, and avail himself of it to enforce contribution from his non-paying co-sureties? The right of a surety who has paid the judgment against himself and his principal to keep it alive by having an assignment made to a stranger for his benefit is well settled. (Freeman on Judgments, Sec. 470; Black on Judgments, Sec. 996.) He may also, as against his principal, be subrogated to all the rights of the creditor under the judgment, where such is the intention at the time payment is made. (*German American Bank* v. *Fritz, supra; Eddy* v. *Traver,* 6 Paige, 521; *Goodyear* v. *Watson,* 14 Barb. 486; *Flemming* v. *Beaver,* 2 Rawle, 128, S. C. 19 Am. Dec. 629; Freeman on Judgments, *supra.*) And this may be done whether an assignment be made for the benefit of the surety or not. (*Scribner* v. *Hickock,* 4 Johns. Ch. 530; *Flemming* v. *Beaver, supra,* with notes.) The court will, in such case, make the substitution, and grant such relief as may be proper. It is held, also, that a voluntary payment of the judgment by one of several defendants primarily liable thereunder inures to the benefit of all, and extinguishes the judgment. (Freeman on Judgment, Sec. 472.) ''Whether one of the several persons against whom a joint judgment has been recovered may pay the judgment, and still keep it on foot by any means or for any purpose, is a ·question upon which the authorities are very equally divided.'' (*Id.*) It is held in New York that this cannot be done. (*Harbeck* v. *Vanderbilt,* 20 N. Y. 395; *Booth* v. *F. & N. National Bank,* 74 N. Y. 228.) This rule is recognized in Massachusetts, Vermont, North Carolina, Indiana, and Alabama. (*Hammatt* v. *Wyman,* 9 Mass. 138; *Porter* v. *Gile,* 44 Vt. 520; *Sherwood*

v. *Collier*, 14 N. C. 380, S. C. 24 Am. Dec. 264; *Preslar* v.
*Stallworth*, 37 Ala. 402; *Klippel* v. *Shields*, 90 Ind. 81.)
But there is an intimation in these cases cited from New York,
Indiana, and North Carolina that this is not the rule where.
there are special circumstances in the case, and the judgment
be assigned for the benefit of the paying defendant, or where
he occupies the position of a surety, and not that of one who
is primarily liable. In *Klippel* v. *Shields, supra,* the court
say: "There are cases where a different rule applies; as
where the person who pays the debt occupies the position of
surety, or some similar relation."

On the other hand, it is held by eminent authority that a
surety who pays the judgment for his principal and co-sure-
ties may not only keep the judgment alive as to his principal
to enforce reimbursement, but also against his co-sureties for
the purposes of contribution; and this may be done either by
assignment to a third party for the benefit of the surety pay-
ing, or by direct assignment to the surety himself. (*Coffee* v.
*Tevis*, 17 Cal. 239; *Wheeler's Estate*, 1 Md. Ch. 80; *Brown*
v. *White*, 29 N. J. Law, 514; *Scribner* v. *Hickock, supra;*
*Lidderdale's Ex'rs* v. *Robinson's Ex'r*, 12 Wheat. 595; 1
Brandt on Suretyship (2d Ed.) Sec. 279.) The right to sub-
rogation in such cases is made to depend upon the intention of
the debtor at the time the payment is made. In *Campbell* v.
*Pope*, 96 Mo. 468, 10 S. W. 187, a judgment had been ren-
dered against several joint defendants, including the city of
St. Louis. The judgment was for a tort. Under a clause in
its charter the city of St. Louis was only secondarily liable.
This judgment was assigned by the plaintiff to a third party,
to be kept alive for the benefit of the city, which paid it for
the purpose of enforcing contribution. The court supports
the right to do this, and, after citing with approval the doc-
trine of the cases *supra*, say: "We must hold, and do hold,
that the payment made by Campbell for the assignment of
the judgment was not intended to be a satisfaction of the
judgment, and that the assignment thereof to him was made
for the purpose of keeping the judgment alive, so that it

might be enforced against the co-defendants, who, under the judgment and charter provision above quoted, were primarily liable for its payment.''

We are unable to draw any substantial distinction between the rights of a surety against his principal and his rights as against his co-surety. In each case they are founded upon the implied agreement, growing out of the relation the parties bear to each other, that the one will refund or make good to the other money paid out by the former for the benefit of the latter. If the assignment can be made to a third party, and he can proceed as the agent of the paying defendant to enforce contribution against the co-defendants, there is no sound reason why the same thing cannot be done by an assignment directly to the paying defendant himself, and contribution enforced in his name. To say that one can do through an agent what he cannot do himself seems absurd. In the case of *Coffee* v. *Tevis, supra,* the court brushes aside this fiction, and treats the judgment assigned to the agent as if it had been made directly to the paying defendant. We are of the opinion, not only that the assignment may be made for the benefit of the co-surety, but that it may be made directly to the person who is to benefit by it, and that he may enforce it in his own name. This conclusion seems to be in conformity with the spirit of our statute that the real party in interest shall prosecute the action in his own name. (Section 4, First Division, Comp. St. 1887; Sec. 570, Code Civil Procedure 1895.)

2. It appears from the record, without dispute, that the judgment in this case was formally satisfied by an entry on the judgment record some time after the assignment was made. The respondents were engaged in dealing in real estate, and this satisfaction was entered in order that the lien of the judgment might not appear as a cloud upon their title. The judgment standing open as to them, they were put to the inconvenience of securing releases, or giving bond to clear the title. Crutcher, after taking advice, procured the satisfaction to be entered by counsel for the bank. It was intended

to have it entered as to respondents only. Atkinson had no connection with the matter, nor did he pay any consideration for it. The contention is made that this entry of satisfaction precludes the respondents from obtaining any relief. This contention would be well founded if the satisfaction had been entered generally by plaintiff before the assignment, or, at the request of the defendants, after the assignment, for the purpose of discharging the judgment. (Freeman on Judgments, Sec. 466.) But such was not the case here. The judgment was assigned by the plaintiff to the respondents, to be kept alive by them for the purpose of enforcing contribution, and no entry of satisfaction thereof would inure to the benefit of the non-paying surety unless the intention was thereby to discharge him. It was the intention here that the satisfaction of the judgment should be effective only as to the respondents, and not as to the other defendants. It was not entered in pursuance of any agreement between appellant and respondents. Therefore, as to him, the judgment remained unsatisfied, and, if in force at all against him, it was in force for all purposes. A formal satisfaction of a debt, without payment, where it is intended that discharge shall take effect upon such payment, does not prevent the payee from enforcing the collection of his claim. There is no reason why the same rule should not apply to a judgment. In reaching the conclusions we announce in this case, we are not unmindful of the old distinctions between actions at law and in equity. Under the provisions of our statute (Comp. St. 1887, First Division, Sec. 1; Constitution Art. VIII, Sec. 28; Code of Civil Procedure 1895, Sec. 460) these distinctions as to form have been abolished, and the court, having jurisdiction of the parties, can afford such relief as the facts of the case may justify. (*Faurot* v. *Gates*, 86 Wis. 569, 57 N. W. 294.) An examination of the authorities cited in the former part of this opinion will show that courts of equity readily granted such relief as is sought herein, and we see no reason why it should be denied here, and the respondents driven to a separate action.

3.   A further assignment is made by counsel for appellant

in their argument, though it is not in their brief, that the court below erred in permitting respondent Crutcher to state in his testimony that it was not his intention, at the time he procured satisfaction of the judgment to be entered, to satisfy it as to appellant. This evidence was clearly competent, and the trial court committed no error in admitting it.

Let the order appealed from be affirmed.

*Affirmed.*

MR. JUSTICE PIGOTT, having been of counsel, took no part in this decision.