No. 83-294

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

HARRY H. JANKE,

       Plaintiff and Respondent,

  -vs-

BERNARD L. SMYK, LOUIS A. SMYK,

       Defendants and Appellants.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Jackson Law Firm; Gregory Jackson argued, Helena,
Montana

    For Respondent:

        McKinley Anderson argued, Bozeman, Montana

---

          Submitted:   March 6, 1984

            Decided:   May 29, 1984

Filed: MAY 29 1984

*Ethel M. Harrison*
_____
                Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendants, Bernard and Lois Smyk as principal debtors on a promissory note, and Harry H. Janke, as an indorser, appealed a judgment entered in Yellowstone County District Court in favor of the First Bank of Billings following a nonjury trial for collection of an overdue note in the amount of $25,000. After the appeal was filed, Janke paid the judgment to the Bank, and was substituted as respondent, and now seeks to enforce the Bank's judgment against the Smyks. We affirm.

The Smyks raise four issues, one relating to their liability to the Bank on the note, and three questioning the legality of the Bank's assignment of the judgment to Janke. On the liability question, the Smyks contend that the Bank fraudulently and materially altered the terms of the note by later stating on the note that it had been verbally extended, and that interest accrued at 21 percent. On the questions relating to the legality of the assignment, the Smyks allege that Janke failed to follow the procedure set forth in section 25-13-104(2), MCA, for assignment of a judgment, that the Bank had no right to assign the judgment to Janke because a judgment on appeal is not final, and that equity and due process of law should prohibit an assignment which results in a coappellant seeking to reverse a judgment changing to a respondent seeking to uphold the judgment.

On September 15, 1980, Bernard Smyk requested a loan of $25,000 from the First Bank of Billings to purchase a combine for his ranch in Canada. The loan officer indicated that he was not interested in making the loan at that time, but

stated that if the Smyks arranged for an indorser on the note, the Bank might reconsider the loan.

The next day, September 16, Bernard Smyk returned to the bank with Harry H. Janke, who offered to indorse the note. Facts show that Janke was to be paid $4,000 for giving his indorsement on Smyk's loan. The loan officer was satisfied with Janke's financial status, and on that day made the loan to the Smyks for $25,000, at 14 percent interest per annum, and due on December 15, 1980. Bernard and Lois Smyk signed as makers of the note, and Harry Janke as indorser on the back. Among other things, the note expressly provided that all signatories consented to any extensions or renewals without notice.

The Smyks failed to pay the note when due, and a month later, on January 15, 1981, the loan officer extended the note for 30 days or until February 15, to enable the Smyks to pay the note. The loan officer wrote on the note "verbal extension, 1/15/81." On approximately the same date, another loan officer wrote on the note "accrue at 21%." The Smyks failed to make payment, and a month later, on March 18, 1981, the Bank officer sent a demand letter to the Smyks stating that the Bank would demand payment from Janke unless the Smyks submitted a definite plan of repayment.

On April 8, 1981, approximately 2 weeks after the demand letter to the Smyks, the loan officer proposed a new note. He wrote to Janke, stating that the note was past due, and requested that Janke indorse another note, and give the Smyks additional time and continued backing. The second note was for the amount of $27,500, which represented the original amount of $25,000, plus capitalization of the interest accrued at 14 percent per annum. The second note was at 19

- 3 -

percent interest because that was the prevailing interest rate as of that date. Janke refused to sign the new note as indorser and letters between the loan officer, the Smyks and Janke were exchanged. However, the Smyks still failed to pay the original note.

The Smyks raised the affirmative defense that they had no duty to pay the note because the Bank had fraudulently and materially altered the note by placing notations on the note that a verbal extension had been granted and that the interest rate was 21 percent. The Bank, on the other hand, took the position that the notations were only for internal Bank reference and that they did not alter the terms of the note.

Janke, as a codefendant, denied primary liability on the note and alleged that he signed the note only as an accommodation to the Smyks. He cross-claimed against the Smyks and alleged that he was only an accommodation party to the note and that the Smyks had the duty to indemnify him if he paid the note.

Only the Bank's loan officer testified at trial. He testified that the note was unpaid at the time of trial and that the notations on the note were only for internal reference, and did not change and were not intended to change the terms of the note. He testified that the Bank never attempted to collect the note at a rate of interest higher than 14 percent, and that the 21 percent figure on the note was a reminder to him that if a new note were executed, the interest rate should be 21 percent, the then prevailing interest rate. Smyk and Janke presented no witnesses, nor did they testify.

The record is barren of any evidence that the Bank attempted to charge anything more than the original 14 percent interest agreed upon as part of the original note. The trial court ruled in favor of the Bank, finding that the notations on the note were for internal bank reference only, and were not material alterations of the note. Nonetheless, the Smyks argued in trial court and argue now that the evidence supports a conclusion that the Bank attempted to charge 21 percent interest. They base this on the fact that a verbal extension was given by the Bank without first contacting the Smyks or Janke. They argue that the fact of the note's extension, together with the notation on the face of the note that the note was extended, is proof that the Bank acted on the notations, including the notation that interest was to be figured at 21 percent.

It is clear, however, that the writings on the face of the note "verbal extension, 1/15/81," and "accrues at 21%," do not alter the terms of the note. First, the note itself expressly provided that all signatories consented to any extensions or renewals without notice, and the notation here is simply an indication that on January 15, 1981, the Bank officer did give an extension.

Although it is true that the notation "accrues at 21%" was written on the original note, it was not intended as a substitute for the 14 percent interest rate reflected in the body of the original note. The notation "accrues at 21%" was simply a reminder to the Bank officer that the proposed second note, a note that was rejected by Janke, would have a 21 percent interest figure, if agreed to in January or February 1981. This proposed second note computed past due interest at 21 percent for the period of time from the due

date of the original note to the date of filing the action, but it did not change the interest rate on the original note. Once the Smyks failed to pay the original note, the Bank had the right to change the interest rate in the event the parties signed another note. However, the Smyks and Janke refused to sign the proposed second note, and therefore their obligation was still based on the original note: repayment of $25,000 principal, at 14 percent interest.

We proceed next to a discussion of the validity of the Bank's assignment of its judgment to Janke while the case was on appeal. After the District Court judgment against both the Smyks and Janke, Janke adopted the Smyks' briefs on appeal as his position also. However, shortly after this appeal was filed, Janke paid the Bank approximately $35,120 in full satisfaction of the judgment, and the Bank assigned its judgment to Janke. Janke was then substituted for the Bank as the respondent in this appeal. Shortly before this case was argued, Janke died and his estate now seeks repayment from the Smyks, but the Smyks claim that neither Janke nor his estate have a right to collect on the judgment.

The Smyks first contend that section 25-13-104(2), MCA, is the exclusive method by which a paying surety may compel repayment from the principal, and that because Janke did not comply with the procedure he cannot compel repayment. Under this statute, after a surety has paid a judgment entered against the principal, to avail himself of the judgment, the surety must file a notice of payment with the clerk of court, and must file a claim for repayment within ten days of satisfaction of judgment. Although it is true that Janke did not follow this procedure, early case law interpreting this same statutory language holds that the statutory procedures

- 6 -

for compelling payment are cumulative with all other rights of a surety. See Merchants National Bank of Great Falls v. Opera House Company (1899), 23 Mont. 33, 57 P. 445, interpreting section 1242, Code of Civil Procedure 1895, the predecessor to section 25-13-104, MCA. This is still the law in this state.

The right of a paying surety to enforce payment from the principal is based on the implied agreement between them that the principal will refund the surety for money paid by the surety for the benefit of the principal. We hold that Janke had a right to proceed by any recognized manner to obtain reimbursement. We note, in this regard, that other statutes provide for reimbursement when a surety is required to pay the principal's obligation. Sections 25-15-202, 27-1-703, 28-1-303, and 28-11-417, MCA, all relating to the right of contribution from joint debtors. Clearly, failure to comply with section 25-13-104(2), MCA, does not preclude Janke or his estate from proceeding against the Smyks to obtain reimbursement for payment of the judgment.

The Smyks also contend, relying on Taylor v. Taylor (Kan. 1956), 303 P.2d 133, that a judgment on appeal is not final and therefore is not assignable. In Taylor, the Kansas Supreme Court, in affirming the trial court, relied on a Kansas lis pendens statute that is different from our own. The Kansas statute (Kans. Stat. Ann. § 60-2601 (1949)) provides that no interest can be acquired in the subject matter of a case on appeal. Our lis pendens statute (section 70-19-102, MCA) does not so provide. Although we have not decided a case directly on point, we have held that a cause of action, or a judgment rendered, may be transferred. State ex rel. Coffey v. District Court (1925), 74 Mont. 355, 240 P.

667. It follows, at least in most cases, that if a cause of action or a judgment is assignable, that judgment may still be assigned while it is on appeal. 46 Am.Jur.2d Judgments § 883. We, therefore, conclude that the Bank could validly assign its judgment to Janke while the judgment was on appeal.

Finally, the Smyks argue that their cause on appeal has been irreparably damaged by substitution of Janke as the respondent after he has already been one of the co-appellants, and that equity and due process considerations should not permit this result. The Smyks contend that at trial, and initially on appeal, they relied on Janke's contentions that the note was materially altered, and they argue that this defense is destroyed now that Janke or Janke's estate is seeking to enforce the judgment after paying the same and taking an assignment of that judgment.

The Smyks, however, not only relied on Janke's position that the note was altered, they in fact took that position themselves both at trial and now on appeal. For the Smyks to get relief, they must, in any event, satisfy this Court that the note was materially altered. The Smyks can and have made their arguments without the aid of Janke, and we have considered these arguments. We fail to see how Smyks' rights have been compromised where they had the burden to prove, in any event, as the principal signatories to the note, that the note was materially altered. That proof, one way or the other, is in the record, and does not depend on the position that Janke once took or that he now takes. We note, furthermore, that Janke did not stand in a fiduciary position to the Smyks and he owed them no duty to continue to support

their appeal.  His duty, as a surety, was to pay a judgment entered against the Smyks.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____

_____
Justices